**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jimmie Lee CLEMIS (92–4218/4220);
and Lamar Arnold (92–4250),
Defendants–Appellants.**

Nos. 92–4218, 92–4220 and 92–4250.

United States Court of Appeals,
Sixth Circuit.

Submitted Oct. 12, 1993.

Decided Dec. 9, 1993.

Rehearing Denied Jan. 26, 1994.

Blas E. Serrano, Asst. U.S. Atty. (briefed), Office of the U.S. Atty., Cleveland, OH, for plaintiff-appellee.

Dennis P. Levin (briefed), Cleveland, OH, for defendant-appellant.

Before: MARTIN and JONES, Circuit Judges; and DeMASCIO, Senior District Judge.*

PER CURIAM.

Jimmie Lee Clemis and Lamar Arnold appeal their convictions and sentences for conspiracy to distribute and distribution of cocaine. In addition, Clemis appeals his convictions and sentences for use of a firearm during a drug trafficking offense and possession of a firearm by a convicted felon. For the following reasons, we affirm the district court in part and reverse in part.

In August 1991, pursuant to a continuing investigation of Jimmie Lee Clemis and Lamar Arnold, Cleveland police searched garbage from Clemis' residence, located at 16709 Kenyon Road in Shaker Heights, Ohio. Plastic baggies recovered from the garbage tested positive for cocaine residue.

On October 28, 1991, the police arrested Myron Miller. To avoid prosecution, Miller agreed to cooperate with police in their investigation of Clemis and Arnold. Miller confessed to selling cocaine with Arnold that past summer and delivering the proceeds from the transactions to Clemis. On October 29, 1991, the FBI and the police made a controlled purchase of four and one-half ounces of cocaine from Arnold through Miller, using previously photocopied money. Following the transaction, Arnold was observed entering an apartment building. Shortly thereafter, Clemis entered the same building and later emerged carrying a package. Clemis was then followed back to his residence on Kenyon road.

The investigating officers subsequently arranged, through Miller, for the purchase of one kilogram of cocaine from Arnold. On November 1, the agreed-upon date of the transaction, the officers observed Arnold enter the vehicle of Willie Marshall. Marshall later testified that he had provided Arnold with cocaine, which Marshall had stored at Clemis' request. After observing Arnold drive toward the location where the drug transaction was to be completed, with the package he had received from Marshall, the investigating officers approached Arnold in several police vehicles. Arnold refused to stop and the officers gave chase. Arnold's vehicle came to a halt in the middle of a field, and he fled on foot. As he was exiting his car, Arnold disposed of several packages, which later proved to contain cocaine. Arnold was apprehended and arrested after a brief chase. Shortly after arresting Arnold, the officers observed Clemis in the immediate area and arrested him as well.

The investigating officers then obtained search warrants for two residences owned by Clemis; one on Kenyon Road, and the other on Michelle Ruelle Road in Cuyahoga Falls, Ohio. At the Kenyon Road residence, the officers recovered $39,000 in cash, including three one hundred dollar bills and twenty-three fifty dollar bills which had been used in the controlled purchase from Arnold on October 29. Three firearms were found in the master bedroom of the house, two of which

---

* The Honorable Robert E. DeMascio, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

were in a nightstand along with a man's personal items, and one of which was found in a separate nightstand along with a woman's personal items. No drugs or drug paraphernalia were found at the residence. At the Michelle Ruelle Road residence, $181,455 in cash was discovered. No drugs or drug paraphernalia were found at this residence either.

A grand jury returned a five-count indictment against Clemis and Arnold, charging them with conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and distribution and possession of cocaine with intent to distribute the same, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Clemis was also charged with two counts of possession of a firearm during and in relation to the commission of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). In addition, Clemis was charged in a separate indictment with two counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(a).

On May 14, 1992, the two cases against Clemis were consolidated for trial. On July 21, the court denied motions by Clemis and Arnold to suppress evidence, and a motion by Clemis for severance. At trial, the government presented evidence of prior similar acts, pursuant to Federal Rule of Evidence 404(b), in the form of a 1990 drug transaction in which Clemis took part. On July 29, the jury found both defendants guilty on all counts charged. The court sentenced Arnold to a term of imprisonment of 168 months. Clemis was sentenced to a total term of imprisonment of 300 months; 240 months on counts one through three of the initial indictment, to run consecutively to a term of 60 months on counts four and five of the same indictment, the § 924(c) charges. Clemis was also sentenced to a term of imprisonment of ten years on the separate indictment to be served concurrently with the other sentences.

Defendants allege numerous errors by the district court. First, Clemis and Arnold contend that the court erred in permitting the government to introduce evidence of Clemis' 1990 drug transaction. Second, Arnold argues that the investigating officers lacked the requisite probable cause or reasonable suspicion to detain him on November 1, and that the court thus erred in not suppressing evidence obtained as a result of his arrest. Third, Clemis contends that the search warrants for his two residences clearly were not based on probable cause, and that the searches therefore violated his constitutional rights. Fourth, Clemis further maintains that the evidence presented at trial was insufficient to support his conviction for the use of a firearm during a drug trafficking offense and possession of a firearm by a convicted felon. Fifth, he argues that the court erroneously prevented him from introducing lottery tickets, dated after the end of the drug conspiracy, that he purchased. The tickets, he claims, constitute habit evidence of his propensity to gamble, which explains the large sums of currency seized from his residences. Finally, Clemis contends that the court erroneously denied his motion for severance.

■ Initially, we consider defendants' claim that the district court erred in admitting evidence of Clemis' 1990 drug transaction pursuant to Rule 404(b). This Court has held that:

In reviewing the admission of evidence challenged under Rule 404(b), we must make two determinations. First, we must decide whether ... [the evidence] was admissible for any proper purpose, as distinct from the *improper* purpose of showing "character" or "propensity." If we conclude that there was a proper basis for admission, we must then consider whether the probative value of the evidence outweighed its potential prejudicial effects.... In the second instance, the standard of review on appeal is whether the trial judge abused his discretion in admitting the evidence.

*United States v. Vincent,* 681 F.2d 462, 465 (6th Cir.1982) (citations omitted); *United States v. Paulino,* 935 F.2d 739, 754 (6th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 315, 116 L.Ed.2d 257 (1991). We have further noted that in determining the admissibility of evidence under Rule 404(b), "a trial judge is accorded 'broad discretion.'" *United States v. Vance,* 871 F.2d 572, 576 (6th

Cir.) (citation omitted), *cert. denied,* 493 U.S. 933, 110 S.Ct. 323, 107 L.Ed.2d 313 (1989).

■ As to the threshold test of admissibility, defendants contend that the evidence of Clemis' prior crime was meant only to establish his criminal propensity. The cases upon which they rely, however, are easily distinguishable from the instant matter. In rejecting evidence of prior acts in *United States v. Zelinka,* 862 F.2d 92 (6th Cir.1988), we found that the government "failed to articulate any theory of admissibility." *Id.* at 99. Similarly, in *United States v. Bakke,* 942 F.2d 977 (6th Cir.1991), we found neither . intent, knowledge nor any related question to be a contested issue. *Id.* at 983. Here, by contrast, Clemis based his defense on lack of knowledge or involvement in the drug conspiracy. In response, the government's theory of admissibility was that the prior crime evidenced Clemis' intent, motive, and plan for the current conspiracy. In the 1990 transaction, as in the instant case, Clemis supplied a second individual, who actually sold the cocaine and then paid the proceeds to Clemis. Evidence of the prior crime was therefore admissible for a proper purpose.

We further conclude that the district court did not abuse its discretion in admitting the Rule 404(b) evidence. Prior to the presentation of the evidence, the court instructed the jury that the evidence was admissible only for the limited purpose specified by Rule 404(b) and that Clemis' prior bad act had nothing whatsoever to do with Arnold. The court subsequently charged the jury again at the conclusion of the case as to the proper scope of the Rule 404(b) evidence that the government had introduced.

■ Next, we consider Clemis' contention that the evidence presented at trial was insufficient to support his conviction for carrying or using a firearm "during and in relation" to a drug trafficking offense. We review claims of insufficient evidence to support a jury finding of guilt under the standard of "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Martin,* 897 F.2d 1368, 1373 (6th Cir.1990) (quoting

*Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

■ The "during and in relation to" language contained in § 924(c)(1) is designed to prevent conviction for mere possession of a firearm during the course of criminal conduct. *United States v. Brown,* 915 F.2d 219, 224 (6th Cir.1990). The offense requires proof of some relationship between the weapon and the underlying offense that shows that the weapon at least "facilitated" the offense. *Id.* This Court has held that when considering the evidence submitted, "the terms 'uses' and 'carries' in Section 924(c)(1) 'should be construed broadly enough to cover the gamut of situations where drug traffickers have *ready* access to weapons with which they secure or enforce their transactions.'" *United States v. Head,* 927 F.2d 1361, 1366 (6th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 144, 116 L.Ed.2d 110 (1991) (quoting *United States v. Acosta–Cazares,* 878 F.2d 945, 952 (6th Cir.), *cert. denied,* 493 U.S. 899, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989) (emphasis added)). Thus, "carries" does not require actual possession, and "uses" does not necessitate the display or brandishment of the weapon. *United States v. Acosta–Cazares,* 878 F.2d at 951.

■ Constructive possession of a firearm, which is sufficient under the statute, exists when a person knowingly has the power and the intention at a given time to exercise dominion and control over a firearm, either directly or through others. *United States v. Moreno,* 933 F.2d 362, 373 (6th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 265, 116 L.Ed.2d 218 (1991). It follows that constructive possession also exists when the person has dominion over the premises where the firearm is located. *United States v. Snyder,* 913 F.2d 300, 304 (6th Cir.1990), *cert. denied,* 498 U.S. 1039, 111 S.Ct. 709, 112 L.Ed.2d 698 (1991). Significant evidence was introduced at trial which indicated that Clemis had dominion over the Kenyon Road residence where the weapons were found. Accordingly, Clemis could rationally be found to have been in constructive possession of the firearms.

In keeping with the broad construction given to the terms of the statute, this Court has joined many other Circuits in adopting the "fortress" theory to be applied to cases involving firearms found on premises under the control of a drug offense offender. *United States v. Henry*, 878 F.2d 937, 944 (6th Cir.1989). Under the "fortress" theory, if "it reasonably appears that the firearms found on premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction, then such firearms are used 'during and in relation to' a drug trafficking crime." *Id.* The fortress theory has broadened the meaning of the phrase "during and in relation to." This Court has recognized that weapons may be kept at the ready to protect a drug house, thereby safeguarding and facilitating illegal transactions. *United States v. Acosta–Cazares*, 878 F.2d at 951–952 (quoting *United States v. Matra*, 841 F.2d 837, 842 (8th Cir. 1988)).

Even though the language of section 924(c) is quite encompassing, we have not extended the fortress theory so far as to find liability based on facts comparable to those now before the court. In the instant case, the firearms were not found in the same room, or even in the same house as any drugs or drug paraphernalia. While currency used in a prior controlled drug purchase was found in the house, there was no evidence that a drug transaction ever took place in the house. In fact, the only indication that any controlled substance was ever near the house was the discovery of traces of cocaine in discarded garbage bags. This discovery, however, was made over two months before the events of October 29 and November 1, 1991. Further, none of the drug deals to which the defendant has been linked took place in the vicinity of the Kenyon Road residence. Finally, there was absolutely no evidence that Clemis carried a weapon during the transactions in questions or at any other time.

The government would have us recognize that the presence of the "marked" money establishes that the weapons found were used to protect the proceeds of a drug transaction, thereby facilitating the drug transaction. We cannot make this jump. While we agree that the terms of the act are to be construed broadly, it is still the law that mere possession of a weapon during the course of criminal conduct is not enough. *United States v. Morrow*, 923 F.2d 427, 433–34 (6th Cir.1991). To agree with the government would require us to ignore this well-established principle. Thus, we conclude that a rational jury could not, beyond a reasonable doubt, have found Clemis guilty of the "use during and in relation to" element of section 924(c).

We have considered defendants' other assignments of error and find them to be without merit.

For the foregoing reasons, the judgment of the district court is affirmed as to all counts, except counts four and five of case number 1:91CR00349, which we reverse.

This case is remanded to the district court for resentencing of Clemis consistent with this decision.