**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0535n.06
Filed: August 28, 2008

**No. 07-5860**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CLYDE SANDER COOK, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

**Before: ROGERS and McKEAGUE, Circuit Judges; ADAMS, District Judge.**[*]

**ROGERS, Circuit Judge.** On April 12, 2007, a jury convicted defendant Clyde Sander

Cook of selling counterfeit currency, in violation of 18 U.S.C. § 473, and of being a felon in

possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g). Cook appeals his

convictions on three grounds, arguing that (1) the evidence was not sufficient to support either

conviction; (2) the district court erred in admitting evidence of a previous arrest under Fed. R. Evid.

404(b), and (3) the district court erred by failing to give a specific unanimity instruction to the jury

with respect to the felon-in-possession count. Because none of Cook's arguments has merit, we

affirm.

---

[*]The Honorable John R. Adams, United States District Judge for the Northern District of
Ohio, sitting by designation.

**I.**

On March 17, 2004, a confidential informant named Albert Settles approached Detective Kevin Thompson of the Bartlett, Tennessee Police Department, claiming that he could obtain counterfeit money from defendant Cook. The next day, Thompson arranged for Settles to make a controlled purchase of counterfeit money at Cook's apartment, which was located in the Cafalger Apartments complex in Arlington, Tennessee. Before the operation, officers from the Bartlett Police Department fit Settles with a wire transmitting device and searched Settles's vehicle and person to ensure that no contraband was present. Settles then drove himself to the Cafalger Apartments with the officers following.

Detective Thompson stationed himself at a school near the apartment complex and positioned other officers inside of the complex, though no officer could see the entrance of Cook's apartment. After Settles entered the apartment, Thompson was able to make out a conversation between Settles and one other male. Because of background noise and poor transmission, however, Thompson could not hear the conversation between Settles and the apartment occupant. Settles exited the apartment and drove himself back to the police department, again with officers following. Upon searching Settles, the officers recovered three twenty-dollar counterfeit bills and one ten-dollar counterfeit bill. At trial, Settles testified that, in addition to himself and Cook, two other men were present inside the apartment during the transaction.

Following the operation, Detective Thompson contacted Agent Patrick Davis of the United States Secret Service. Thompson scheduled a meeting later that day for Davis to meet Settles. At the meeting, Davis decided to use Settles as a confidential informant, and the Secret Service assumed command of the investigation. Davis and other Secret Service agents organized a second operation for the next day, March 19, 2004. Before that operation, agents again searched Settles and his vehicle to ensure that Settles possessed no contraband, and outfitted Settles with a wire transmitter. Settles was given one hundred dollars to purchase both counterfeit currency and illegal drugs. Settles then drove himself to the apartment complex with agents and police officers following.

Prior to Settles's arrival, Secret Service agents established surveillance inside the apartment complex and were able to observe the door to Cook's apartment. When Settles arrived, agents watched Settles walk into Cook's apartment. Although the wire transmitter again became ineffective, Agent Davis was able to hear the voice of one male in addition to Settles's voice. At one point, Settles remained in the apartment while Cook left the apartment and walked to the backside of the building. Cook returned minutes later holding something in his hand and re-entered the apartment. After a few minutes, Settles exited the apartment and drove himself to the Bartlett Police station, again with officers and agents following. Upon his arrival at the police station, officers and agents recovered from Settles eighty dollars in counterfeit currency and a few rocks of crack cocaine. At trial, Settles testified that, in addition to himself and Cook, a female was present in the apartment during this second transaction. Settles testified that during both transactions, he obtained the

counterfeit money from Cook. Agent Davis testified that the counterfeit money obtained during both transactions was produced using computer ink-jet technology.

Based on Settles's two controlled purchases, Agent Davis obtained a search warrant for Cook's apartment. The warrant was executed on March 24, 2004. When officers entered the apartment, a female was present. During the search, officers found a .22 caliber rifle, four .357 magnum cartridges inside a jewelry box, and 12-gauge shotgun shells in the closet. Officers also found a utility bill from March 2004 for the apartment, a lease for the apartment, and another document tacked to the wall, all bearing Cook's name. The officers did not recover any counterfeit money or crack cocaine, nor did they find any of the marked money that Settles had used to purchase the crack cocaine and counterfeit money. Although officers found a computer in the apartment, the computer did not have a scanner, and there were no counterfeit bills saved on the computer.

On January 11, 2006, a grand jury returned an indictment charging Cook with transferring, selling, or delivering counterfeit currency with the intent that the currency be passed or used as true and genuine, in violation of 18 U.S.C. § 473, distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1), and being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g). The case went to trial on April 9, 2007. Prior to trial, the government filed a motion in limine requesting that the district court permit testimony, under Fed. R. Evid. 404(b), related to Cook's arrest in 2002 for uttering counterfeit currency. The district court granted the government's motion during trial, and the prior act testimony was elicited at trial.

On April 12, 2007, the jury convicted Cook of the counterfeit money count and the felon-in-possession count, but acquitted Cook of the narcotics distribution count. On July 13, 2007, the district court sentenced Cook to 235 months' imprisonment on each count of conviction, to be served concurrently.

**II.**

Because the evidence was sufficient to convict Cook on each count of conviction, and because the district court did not otherwise commit error, we affirm.

**A.**

The evidence was sufficient to convict Cook on both counts of conviction. This court reviews de novo the sufficiency of the evidence to sustain a conviction. *United States v. Gibson*, 896 F.2d 206, 209 (6th Cir. 1990). Evidence is sufficient to sustain a conviction if "after viewing the evidence in the light most favorable to the prosecution, *and after giving the government the benefit of all inferences that could reasonably be drawn from the testimony*, any rational trier of fact could find the elements of the crime beyond a reasonable doubt." *United States v. M/G Transp. Servs., Inc.*, 173 F.3d 584, 589 (6th Cir. 1999) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In examining claims of insufficient evidence, this court does not "weigh the evidence presented, consider the credibility of witnesses, or substitute [its] judgment for that of the jury." *Id.* at 588-89.

To establish a conviction for selling counterfeit currency under 18 U.S.C. § 473, the government was required to prove beyond a reasonable doubt that Cook (1) bought, sold, exchanged, transferred, received, or delivered; (2) any false, forged, counterfeited, or altered obligation or other security of the United States; (3) with the intent that the same be passed, published, or used as true and genuine. 18 U.S.C. § 473. Cook contests the sufficiency of the evidence regarding only the first of these elements. Cook argues that, in light of the fact that officers did not recover counterfeit currency in his home during the execution of the search warrant, the evidence at trial was not sufficient to prove that Cook sold Settles the counterfeit currency. This contention lacks merit.

Detective Thompson, Agent Davis, Albert Settles, and two other law enforcement officers all testified regarding the two controlled buys during which Settles purchased counterfeit money from Cook. The evidence at trial established that Settles twice entered Cook's apartment, purchased counterfeit money, and left the apartment. On both occasions, upon returning to the police station, Settles provided officers with counterfeit federal reserve notes. Settles testified that during both transactions, he purchased the counterfeit money from Cook. Before each operation, officers searched Settles and his vehicle to ensure that Settles did not possess contraband before entering Cook's apartment, and officers followed Settles's car to Cook's apartment. During the second operation, Secret Service agents watched Settles enter Cook's apartment. Agents also observed Cook leave the apartment for a short time and return to the apartment minutes later holding something in his hand.

From this evidence, a rational trier of fact could conclude beyond a reasonable doubt that Cook sold Settles the counterfeit money. This is so regardless of the fact that no counterfeit money was found in the apartment during the execution of the search warrant. Settles testified that each time that he purchased the counterfeit bills from Cook, Cook left the apartment for a short time and returned with the items Settles was to purchase. Officer James Wooten, a Memphis police officer assigned to the Secret Service, corroborated Settles's testimony. Wooten testified that, during the second transaction, he personally observed Cook leave the apartment for a short period of time and return carrying something in his hand. From this, a rational juror could infer that Cook kept his contraband at a location outside of his apartment and, accordingly, it is of little significance that no counterfeit money was recovered during the search of the apartment.

It is not true, as Cook contends, that his counterfeit money conviction cannot be sustained because it rests on merely the uncorroborated testimony of Settles, a "convicted drug dealer who was paid for his service." First, Cook's argument, at least in part, seeks to impugn the credibility of Settles before this court. But, as discussed, this court does not consider the credibility of witnesses. Second, Settles's testimony was not the only evidence introduced regarding Cook's sale of counterfeit money. Detective Thompson, Agent Davis, and two other law enforcement officers testified at trial, and all submitted testimony that was generally consistent with and supported Settles's testimony. In addition, the government presented images of, and identified as counterfeit, the bills that Settles turned over to police after exiting Cook's apartment. In total, this evidence was

sufficient for a rational jury to find all the elements of the counterfeit money offense beyond a reasonable doubt.

Cook also contends that, because he was found not guilty on the drug distribution count, no rational juror could have come to a different conclusion with respect to the counterfeit money count given the "identical evidence" presented for both counts. This contention lacks merit. While it is true that trial testimony established that, after the second transaction with Cook, Settles returned to the police station with counterfeit bills and rocks of crack cocaine, the evidence used to prove each count was not identical. As an initial matter, the evidence of Cook's sale of counterfeit money was more robust than the evidence of drug distribution. The trial testimony of the law enforcement officers indicated that Settles purchased counterfeit money from Cook on two occasions, while the purchase of crack cocaine occurred on one occasion. Further, and significantly, during trial Settles acknowledged that he had previously been convicted of selling crack cocaine himself. Based on this, it is entirely possible that the jury found credible Settles's testimony that Cook was the source of the counterfeit bills, but found incredible Settles's testimony that Cook was the source of the crack cocaine. *See, e.g.*, *United States v. Jackson*, 473 F.3d 660, 670 (6th Cir. 2007) ("The jury might have concluded that each of the government's witnesses was somewhat—but only somewhat—credible, and discounted the testimony accordingly."). Finally, even if the verdicts for the counterfeit money charge and the drug charge can be construed as inconsistent, that would not require a reversal of the counterfeit money conviction. As the Supreme Court has explained, even

> where truly inconsistent verdicts have been reached, [t]he most that can be said . . .
> is that the verdict shows that either in the acquittal or the conviction the jury did not
> speak their real conclusions, but that does not show that they were not convinced of
> the defendant's guilt. The rule that the defendant may not upset such a verdict
> embodies a prudent acknowledgment of a number of factors. First . . ., inconsistent
> verdicts—even verdicts that acquit on a predicate offense while convicting on the
> compound offense—should not necessarily be interpreted as a windfall to the
> Government at the defendant's expense.  It is equally possible that the jury,
> convinced of guilt, properly reached its conclusion on the compound offense, and
> then through mistake, compromise, or lenity, arrived at an inconsistent conclusion
> on the lesser offense.

*United States v. Powell*, 469 U.S. 57, 64-65 (1984) (first and second alterations in original) (citation and quotation marks omitted).  For these reasons, Cook's conviction on the counterfeit money count is supported by sufficient evidence.

Cook's conviction on the felon-in-possession count is also supported by sufficient evidence. To prove a felon-in-possession charge, the government must establish beyond a reasonable doubt that Cook (1) had a previous conviction for a crime punishable by imprisonment for a term exceeding one year, (2) thereafter knowingly possessed a firearm or ammunition, and (3) that the firearm or ammunition was in or affecting interstate commerce. *See United States v. Schreane*, 331 F.3d 548, 560 (6th Cir. 2003).  On appeal, Cook contests the sufficiency of the evidence regarding only the second of these elements, arguing that the evidence was insufficient to prove that he possessed the firearm and/or ammunition found in his apartment.

Possession of a firearm or ammunition may be actual or constructive.  *United States v. Gardner*, 488 F.3d 700, 713 (6th Cir. 2007).  "Actual possession means that the possessor had

physical control over the weapon, whereas '[c]onstructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.'" *Id.* (citing *United States v. Kincaide*, 145 F.3d 781, 782 (6th Cir. 1998)). "Proof that 'the person has dominion over the premises where the firearm is located' is sufficient to establish constructive possession." *Kincaide*, 145 F.3d at 782 (quoting *United States v. Clemis*, 11 F.3d 597, 601 (6th Cir. 1993)).

The evidence at trial was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Cook constructively possessed the firearm and ammunition found in his apartment. Cook was charged with possessing a .22 caliber rifle, .357 magnum cartridges, and shotgun shells. Testimony established that, upon execution of the search warrant, officers recovered the rifle and the ammunition from Cook's apartment. The rifle and the cartridges were located in plain view while the shotgun shells were found in a closet. Testimony also established that Cook had dominion over the premises where the firearm and ammunition were located. Officers recovered a utility bill and apartment lease bearing Cook's name. Officers also recovered another document tacked to a wall bearing Cook's name. Further, Secret Service agents had observed Cook entering and leaving the apartment on March 19, 2004. Based on this evidence, a rational jury could conclude beyond a reasonable doubt that Cook knowingly had the power and the intention at a given time to exercise dominion and control over the firearm and ammunition. Consequently, the evidence was sufficient to establish that Cook constructively possessed the firearm and ammunition.

Cook's contention that the evidence instead supports a conclusion that the female occupant of the apartment actually possessed the firearm and ammunition is unavailing. The simple fact that Cook was not present when the search warrant was executed does not lead to the conclusion that the jury's verdict was not supported by sufficient evidence. There was considerable evidence that Cook exercised dominion over the apartment and, accordingly, the jury could have reasonably concluded that the female was merely a visitor. Further, constructive possession "'need not be exclusive but may be joint.'" *United States v. Hadley*, 431 F.3d 484, 507 (6th Cir. 2005) (quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973)). Thus, at a minimum, the evidence permitted the jury to infer that Cook and the female jointly possessed the weapon and ammunition, and Cook points to nothing in the record to contradict such an inference.

For the foregoing reasons, the evidence was sufficient to convict Cook on both counts.

**B.**

The district court properly admitted, under Fed. R. Evid. 404(b), testimony regarding Cook's previous arrest for uttering a counterfeit bill in 2002. Federal Rule of Evidence 404(b) provides, in relevant part, that evidence of other crimes, wrongs, or acts, although not admissible to show criminal propensity, may be admissible for purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The decision to admit evidence pursuant to Rule 404(b) is subject to a three step process:

> The first step requires the district court to decide whether there is sufficient evidence that the other act in question actually occurred. If so, the district court must decide whether the evidence of the other act is probative of a material issue other than character. Finally, if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.

*United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002) (citations and quotation marks omitted).

Cook challenges the admission, under Rule 404(b), of testimony regarding his previous arrest in 2002 for attempting to pass a counterfeit bill. After determining that the arrest was probative of Cook's intent and knowledge in the instant case, the district court allowed Agent Davis to testify regarding his involvement in the 2002 arrest. Agent Davis testified that, in June 2002, the Memphis Police Department contacted the Secret Service after Cook had attempted to pass a counterfeit $100 bill at a Burger King restaurant. After arriving on the scene, Agent Davis identified the $100 bill as counterfeit. According to Agent Davis, Cook claimed that he received the counterfeit bill as change for the purchase of marijuana.

With respect to the first step of the Rule 404(b) inquiry, Cook contends that there was not sufficient evidence to prove that the prior act in question occurred. Yet, as noted above, Agent Davis testified at trial that in 2002 he participated in the arrest of Cook at a Burger King restaurant after Cook tried to pass a counterfeit bill, and Cook does not explain why this evidence was insufficient to establish that the prior act occurred. At oral argument, Cook's counsel seemed to argue that Agent Davis's testimony did not properly establish that Cook had intent to defraud during the 2002

- 12 -

incident. But that contention is better analyzed under the third step of the 404(b) inquiry (probative/prejudice balancing) and, in any event, is belied by the record. Agent Davis's testimony indicated that police were contacted after Cook tried to pass a counterfeit bill at a Burger King restaurant. The quality of the bill was such that workers at the restaurant were able to ascertain the counterfeit nature of the bill before calling police. From this, a reasonable inference can be drawn that Cook also knew that the bill was counterfeit and that he intended to pass that bill as true and genuine. In sum, the district court's conclusion that there was sufficient evidence to show that Cook committed the prior act in question was not clearly erroneous.

Under the second step of the inquiry, the district court properly determined that the evidence of the 2002 arrest was probative of a material issue other than character—namely, Cook's knowledge and intent. As discussed earlier, to convict Cook under 18 U.S.C. § 473, the government was required to prove that Cook sold the counterfeit currency with the intent that it be passed, published, or used as true and genuine. For Cook to possess this criminal intent, it was necessary to establish that he knew that the bills were counterfeit when he sold them to Settles. These matters were at issue during trial. Because Cook pled not guilty to the counterfeit money charge, the government was obligated to prove all the elements of the crime, including the requisite knowledge and criminal intent. *See United States v. Merriweather*, 78 F.3d 1070, 1076 (6th Cir. 1996) ("[T]he government's purpose in introducing the evidence must be to prove a fact that the defendant has placed, or conceivably will place, in issue, or a fact that the statutory elements obligate the government to prove."); *United States v. Lattner*, 385 F.3d 947, 957 (6th Cir. 2004) ("[I]t seems logical that when

[defendant] pled not guilty . . . he put his general intent and specific intent at issue, thereby giving the government the burden to establish both beyond a reasonable doubt.").

This court's decision in *United States v. Crachy*, 800 F.2d 83 (6th Cir. 1986), is directly on point in this regard. There, the defendant was similarly prosecuted under § 473 for selling counterfeit money to a government informant. *Id.* at 84-85. The defendant objected to the admission, under Rule 404(b), of audio tapes in which the defendant spoke of having passed counterfeit money on various occasions in the past. *Id.* at 85-86. This court held that the audio tapes relating the past acts were admissible as proof of the defendant's intent. *Id.* at 87-88. We stated:

> [T]he delivery of counterfeit money is not a crime under 18 U.S.C. § 473 unless it is delivered "with the intent that the same be passed, published, or used as true and genuine . . . ." The element of intent was of critical importance in this case, and the evidence of [defendant's] dealings in counterfeit money was highly relevant to that issue. . . . The key word here is "intent." If [defendant] had knowingly passed counterfeit money before; if he had knowingly kept a supply of it hidden in a locked footlocker; and if, after samples had been removed by his nephew, he had kept his remaining stock out of circulation for three years solely because of fear that the serial numbers on the bills would prove identical to those on the bills passed by his nephew, those facts could unquestionably have been helpful to the jury in determining . . . the intent with which [defendant] turned [the bills] over to [the government informant]. . . . The evidence in question here was offered not to show bad character in general, but to show—very directly—the specific intent without which the . . . transfer of counterfeit currency is not criminous.

*Id.* at 87 (second alteration in original). Like the prior acts at issue in *Crachy*, Cook's prior arrest for uttering a counterfeit bill is highly probative of and relevant to Cook's knowledge and intent in this case. The evidence of the arrest shows that Cook knowingly uttered a counterfeit bill in the past, and this evidence "could unquestionably have been helpful to the jury" in determining the intent with

which Cook sold the bills in this case. Furthermore, the prior act was "substantially similar and reasonably near in time" to the offense at issue in this case such that it was probative of Cook's intent for purposes of § 473. *See Haywood*, 280 F.3d at 721. And because the evidence of the 2002 arrest establishes that Cook dealt in counterfeit money on previous occasions, that evidence also tends to prove that Cook knew that the bills that he sold to Settles in this case were in fact counterfeit. The district court therefore properly determined that the evidence of the 2002 arrest was probative of a material issue other than character.

Cook initially conceded in his brief that the second step of the Rule 404(b) inquiry was satisfied in this case, and that intent was at issue during trial because he pled not guilty. On the day before oral argument, Cook submitted a Federal Rule of Appellate Procedure 28(j) letter retracting the concession and referring to this court's recent decision in *United States v. Bell*, 516 F.3d 432 (6th Cir. 2008). However, leaving aside the issue of the timeliness of Cook's retraction, *Bell* does not help Cook. Indeed, the *Bell* decision recognizes two main premises that support the admission of the other acts evidence in this case: (1) that a defendant puts intent at issue when he or she pleads not guilty to a crime that requires the government to prove intent, and (2) that intent is a legitimate reason to admit Rule 404(b) evidence. *Id.* at 442-43. Moreover, the conclusion in *Bell* that the prior act evidence in that particular case was not sufficiently probative of intent does not mandate a similar conclusion in this case. *Crachy* is directly on point in this case with respect to the probative value of Cook's prior arrest, and Cook altogether fails to address *Crachy* in his brief and Rule 28(j) letter.

Next, Cook argues that, under the third step of the inquiry, the probative value of the evidence of the 2002 arrest was substantially outweighed by the danger of unfair prejudice. This contention also lacks merit. As discussed, and as was the case in *Crachy*, the evidence of Cook's prior arrest was highly probative of and relevant to Cook's knowledge and intent in this case. Cook's prior arrest involved conduct that was substantially similar to the conduct charged in the instant case and, unlike cases where the government has alternative means available to prove intent, *see, e.g.*, *Bell*, 516 F.3d at 445-46 (noting that the government had a number of evidentiary means available apart from the 404(b) evidence to prove defendant's intent to distribute, including the amount of drugs possessed and the presence of drug distribution equipment), there were (and generally are) limited means available to the government to prove the intent requirement of § 473.

Further, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Cook's principal contention regarding unfair prejudice is again based on the fact that he was acquitted of the drug count, but convicted of the counterfeit money count. Cook contends that both counts relied on evidence that was, with the exception of the testimony relating his 2002 arrest, "identical." According to Cook, the acquittal on the drug charge is therefore proof that the evidence of his 2002 arrest led the jury to convict on the counterfeit money count. As discussed above, however, the evidence introduced at trial was not, as Cook claims, identical for each count. First, the jury was presented with testimony from law enforcement officers that related two transactions involving counterfeit money and only one transaction that yielded crack cocaine. Second, Settles was a key witness with respect to the proof against Cook for both the drug count and

the counterfeit money count, and Settles admitted on the stand that he was formerly a crack cocaine dealer himself. In light of this, it is possible that the jury found credible Settles's testimony that Cook was the source of the counterfeit money, but found incredible Settles's testimony that he obtained the crack cocaine from Cook. Thus, Cook's contention that it was exclusively the other acts evidence that led to his counterfeit money conviction is belied by the record.

Cook also disregards the fact that the district court twice gave strong limiting instructions regarding the evidence of his 2002 arrest. "Although, as with all admitted evidence of prior bad acts, this Court may assume that some prejudice potentially inhered," the district court's limiting instructions helped to ensure that Cook would not be unfairly prejudiced by the 404(b) evidence. *Lattner*, 385 F.3d at 958; *see also United States v. Ismail*, 756 F.2d 1253, 1259 (6th Cir. 1985). In sum, the probative value of the evidence of the 2002 arrest was not substantially outweighed by the danger of unfair prejudice.

For these reasons, the district court did not err in admitting evidence of Cook's previous arrest under Rule 404(b).[1]

---

[1]Cook also briefly argues that he was given no notice by the government that Agent Davis's testimony would include the fact that the counterfeit bill that Cook attempted to pass in 2002 was tied to a drug transaction. He claims that "[t]his is evidence of not one prior bad act, but of two." Contrary to Cook's contention, the government provided Cook with proper notice for purposes of Rule 404(b). Agent Davis's testimony concerned one prior act—Cook's previous arrest for passing a counterfeit bill. That the drug transaction was mentioned by Agent Davis to bring context to that arrest does not transform the testimony into evidence of two prior acts. Further, the district court gave a proper limiting instruction that told the jury to consider the evidence only with regard to Cook's knowledge and intent concerning the counterfeit money charge.

**C.**

Finally, the district court committed no error, plain or otherwise, by not giving a specific unanimity instruction to the jury with respect to the felon-in-possession charge. Because Cook failed to object to the district court's jury instructions regarding the felon-in-possession count, his claim is reviewed for plain error. "To establish plain error, a defendant must show (1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *United States v. Schulte*, 264 F.3d 656, 660 (6th Cir. 2001).

Cook claims that the district court should have specifically instructed the jury that they were required to agree unanimously as to which of the firearms and ammunition charged in the indictment Cook possessed before they could convict Cook on the felon-in-possession count. Although Cook acknowledges that, in general, such a specific unanimity instruction is not necessary, Cook contends that the factual scenario in this case created a genuine risk that Cook was convicted by different jurors for different acts. Cook bases this argument on two facts: (1) at the time that agents searched his apartment, a female was present, and (2) the .357 cartridges charged in the indictment were found in a jewelry box. In light of these facts, Cook argues that there was "a potential for one or more juror to convict [Cook] based on the .357 cartridges, but for yet another juror to reject the evidence of [Cook] being in possession of the .357 bullets but find that he was in possession of the .22 rifle or the shotgun shells." Cook's argument is unavailing.

- 18 -

This court has previously addressed the issue of a specific unanimity instruction in the context of a single count that charges possession of multiple firearms. "The fact-specific rule is that no unanimity instruction is required where multiple firearms charged in a single count were discovered as part of the same transaction." *United States v. DeJohn*, 368 F.3d 533, 540 (6th Cir. 2004) (citing *United States v. Sims*, 975 F.2d 1225, 1240-41 (6th Cir. 1992)). As Cook points out, *DeJohn* acknowledged an exception established in *Sims* for cases where "a genuine risk [exists] that the jury is confused or that a conviction may occur as the result of different jurors concluding that a defendant committed different acts." *Id.* (quoting *Sims*, 975 F.2d at 1241) (alteration in original). But such a case is not present here. The indictment charged Cook with possessing a .22 caliber rifle, .357 magnum cartridges, and shotgun shells. Testimony at trial established that officers recovered a .22 caliber rifle, .357 magnum cartridges, and shotgun shells while searching Cook's apartment. Officers also recovered a utility bill, apartment lease, and another document, all bearing Cook's name. Consequently, this case is not so complex that there existed a "chance of jury confusion or of differing outcomes with regard to" the ammunition and firearms located in Cook's apartment. *Sims*, 975 F.2d at 1241. Cook cannot create complexity by merely highlighting the facts that a female was present in the apartment when the warrant was executed and that the .357 magnum shells were found in a jewelry box. The fact remains that the ammunition and weapon charged in the indictment were all located in the same single-room apartment, and the evidence sufficiently established that Cook had dominion over that apartment. Because the ammunition and firearms charged in the single count were all discovered as part of the same transaction, the district court committed no error by not giving a specific unanimity instruction. *Cf. United States v. Roach*, No.

93-5776, 1994 WL 276729, at \*1-\*2 (4th Cir. June 21, 1994) (finding no error in failing to give a specific unanimity instruction where three weapons charged in the indictment were found in different places in defendant's apartment and where defendant's girlfriend had testified that she possessed one of those weapons).

## III.

For the foregoing reasons, we affirm.