OPINION *Page 2 
{¶ 1} Defendant-appellant, Rhydean Zachery, appeals from his convictions and sentences in the Stark County Court of Common Pleas on one count of having a weapon while under a disability, a felony of the third degree, in violation of R.C. 2923.13, and one count of illegal conveyance of weapons onto the grounds of a detention facility, a felony of the fourth degree, in violation of R.C. 2921.36. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On February 25, 2008, appellant made a phone call to his parole officer, Mike Beebe. Appellant informed Mr. Beebe that his father had brought a loaded pistol into the home that appellant shared with his father. He told Mr. Beebe that he should come to his house and remove the weapon. Mr. Beebe testified that appellant indicated that if the gun was not removed he might use it to harm his father.
 {¶ 3} Appellant's father had been cleaning out the garage when he found an operable .25 caliber Raven Arms semi-automatic pistol inside a toolbox. Intending to clean and sell it, he brought the pistol into the house along with a loaded magazine. Appellant's father put the gun underneath the couch and went to the store. He asked his son, the appellant, to run the sweeper while he was gone. When he returned, the gun was no longer underneath the couch. Edward Zachery asked his son about the gun. Appellant replied that he threw it away, saying, "I don't want you to have a gun in the house." Appellant refused to tell his father the location of the gun.
 {¶ 4} Mr. Beebe and several police officers of the Alliance Police Department arrived at the appellant's home and questioned him about the location of the gun. *Page 3 
Appellant was lying on a bed in the rear of the home when the officers entered. He was cooperative and allowed the officers to place handcuffs on him. Appellant stated that he had thrown the gun into some bushes. After the police searched several locations identified by the appellant, the appellant's father convinced him to reveal the weapon's location by assuring appellant that, if he did, he would not be arrested. The delay in revealing the location of the gun lasted approximately forty minutes.
 {¶ 5} The semi-automatic pistol and the loaded magazine were located inside a vent in a bathroom ceiling. The gun was found wrapped in a handkerchief. No usable fingerprints were collected. Appellant was arrested and taken to the Stark County Jail.
 {¶ 6} Appellant developed a habit of concealing items in his clothing while he was in prison. He continued this behavior while he lived with his father. During the booking process, Stark County Deputy Sheriff Shawn Dadisman interviewed appellant. Prior to pat-down, Deputy Dadisman asked appellant whether he had any drugs or weapons on him or "anything that is going to poke or stick me." Appellant responded that he had nothing. During the pat down, Deputy Dadisman felt something in appellant's groin area. Deputy Dadisman again asked appellant whether he had any weapons or drugs. Appellant again replied that he had none.
 {¶ 7} Deputy Dadisman discovered two potential weapons on appellant. A pen cap with a sharpened piece of metal attached was found in between his butt cheeks and a razor blade was found in his wallet, which was wrapped in a flap on his underwear. Appellant was never told that he would be charged with a separate criminal charge if he did not tell the deputy involved in the jail booking process that he had a weapon. *Page 4 
 {¶ 8} On March 31, 2008, the appellant was indicted on one count of having weapons while under disability, a felony of the third degree, and one count of illegal conveyance of weapons onto the grounds of a detention facility, a felony of the fourth degree.
 {¶ 9} On April 14, 2008, the appellant filed a Motion for a Competency Evaluation. On May 27, 2008, the appellant submitted a Plea of Not Guilty by Reason of Insanity and requested a psychological evaluation. The Trial Court found appellant to be competent on July 15, 2008. A jury trial was held in this matter on July 22, 2008 and July 23, 2008. Appellant did not pursue the Plea of Not Guilty by Reason of Insanity and was found guilty of both counts in the indictment. On July 23, 2008, the Court held a Sentencing Hearing and appellant was ordered to serve the maximum prison terms on both counts consecutively, for an aggregate sentence of six and a half (6 ½) years in prison.
 {¶ 10} Appellant has timely appealed, raising as his sole assignment of error:
 {¶ 11} "THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."
 I. {¶ 12} In his sole assignment of error appellant maintains that his convictions are against the manifest weight of the evidence and were not supported by sufficient evidence. We disagree.
 {¶ 13} When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, *Page 5 
reasonably could support a finding of guilt beyond a reasonable doubt. See State v. Thompkins (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541,546 (stating, "Sufficiency is the test of adequacy"); State v.Jenks (1991), 61 Ohio St.3d 259 at 273, 574 N.E.2d 492 at 503. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. Jackson v.Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781; Jenks,61 Ohio St.3d at 273, 574 N.E.2d at 503.
 {¶ 14} Weight of the evidence addresses the evidence's effect of inducing belief. State v. Wilson, 713 Ohio St.3d 382, 387-88,2007-Ohio-2202 at ¶ 25-26; 865 N.E.2d 1264, 1269-1270. "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? Even though there may be sufficient evidence to support a conviction, a reviewing court can still reweigh the evidence and reverse a lower court's holdings." State v. Wilson, supra. However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, supra,78 Ohio St.3d at 387. (Quoting State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717, 720-721). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, supra.
 {¶ 15} Employing the above standard, we believe that the state presented sufficient evidence from which a jury could conclude, beyond a reasonable doubt, that *Page 6 
appellant committed the offenses of having a weapon while under a disability and illegal conveyance of weapons onto the grounds of a detention facility.
 {¶ 16} In the case at bar, appellant was convicted of having a weapon while under a disability. R.C. 2923.13 provides, in relevant part, "no person shall knowingly acquire, carry, have or use any firearm or dangerous ordnance . . . if the person is under indictment for or has been convicted of a felony offense of violence. . . ."
 {¶ 17} Appellant was further convicted of illegal conveyance of weapons onto the grounds of a detention facility. R.C. 2921.36 states in relevant part:
 {¶ 18} (A) No person shall knowingly convey, or attempt to convey, onto the grounds of a detention facility or of an institution that is under the control of the department of mental health or the department of mental retardation and developmental disabilities, any of the following items:
 {¶ 19} "(1) Any deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code, or any part of or ammunition for use in such a deadly weapon or dangerous ordnance . . ."
 {¶ 20} "Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." State v.Huff (2001), 145 Ohio App.3d 555, 563, 763 N.E.2d 695. (Footnote omitted.) Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." State v.McDaniel (May 1, 1998), Montgomery App. No. 16221, (citing State v.Elliott (1995), 104 Ohio App.3d 812, 663 N.E.2d 412). *Page 7 
 {¶ 21} R.C. 2901.21 provides the requirements for criminal liability and provides that possession is a "voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for sufficient time to have ended possession." R.C. 2901.21 (D) (1).
 {¶ 22} Appellant argues that because he was transported to the jail under custodial arrest and physically escorted to the booking area of the jail by law enforcement personnel, his bringing of the "shank" and the razor blades into the jail was not knowing and voluntary. We disagree.
 {¶ 23} Appellant cites State v. Sowry, 155 Ohio App.3d 742,2004-Ohio-399, for the proposition that once he was arrested, he was no longer engaging in a voluntary act to enter the jail with the weapons, and thus he cannot be criminally liable for the conveyance. The facts inSowry indicate the defendant, who had been arrested for disorderly conduct and resisting arrest, was asked by officers at the Miami County Jail whether he had any drugs on his person, to which the defendant replied in the negative. Sowry at ¶ 3. After the booking officers found marijuana on the defendant's person, he was charged with violating R.C. 2921.36(A) (2). Id. at ¶ 4. The Second District Court of Appeals concluded:
 {¶ 24} "At most, Sowry might be charged with knowing that drugs were on his person when officers conveyed him to jail. However, * * * the law will not punish for a guilty mind alone. Because Sowry's conduct with respect to the R.C. 2921.36(A)(2) violation with which he was charged cannot satisfy the requirement for criminal liability that R.C. 2901.22(A)(1) [sic] imposes, the trial court erred when it denied Sowry's Crim. R. 29 motion for judgment of acquittal." Id. at ¶ 22. *Page 8 
 {¶ 25} Upon review, however, we decline to adopt the rationale ofSowry in the present appeal. Under the circumstances of the case sub judice, appellant had hidden items that are considered weapons. Possession of deadly weapons by inmates of a penal institution presents a significantly greater risk of harm than the possession of drugs.People v. Ross (2008), 162 Cal.App. 4th 1184, 1190, 76 Cal. Rptr. 477, 480-481. In Ross, the California Appellate Court noted, "[a]n arrestee commits a sufficiently voluntary act to violate the statute if he or she knowingly brings a deadly weapon into a jail after having denied possessing such a weapon. Section 4574 does not give arrestees a license to lie to law enforcement or correctional officials. Respondent, therefore, was obligated to disclose her possession of the knife or suffer the criminal penalties imposed by the statute. She had no choice whether to go to jail, but she was afforded the choice to not violate section 4574. Had she been truthful at booking, she would not have entered the jail with the knife and would not have been charged in count 2 . . . Respondent's Fifth Amendment privilege permitted her to remain silent. It did not protect her from the consequences of lying to a law enforcement officer, who had properly inquired whether she possessed any weapons. Without Miranda warnings, (Miranda v.Arizona (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694) law enforcement officials may subject an arrestee to questioning `necessary to secure their own safety or the safety of the public' and not `designed solely to elicit testimonial evidence from a suspect.' (New York v. Quarles (1984) 467 U.S. 649, 659 [104 S.Ct. 2626,81 L.Ed.2d 550].) `While the Fifth Amendment provides [suspects] with a shield against compelled self-incrimination, it does not provide them with a sword upon which to thrust a lie.' (State v. Reed (2005) 280 Wis.2d 68, 695 N.W.2d 315, 325; see also *Page 9 Brogan v. United States (1998) 522 U.S. 398, 404 [118 S.Ct. 805,139 L.Ed.2d 830] [`[N]either the text nor the spirit of the Fifth Amendment confers a privilege to lie. `[P]roper invocation of the Fifth Amendment privilege against compulsory self-incrimination allows a witness to remain silent, but not to swear falsely.' "].) Id. At 491-492, 76 Cal. Rptr. At 1191. See also, State v. Carr (Tenn.Crim.App. 2008), No. M2007-01-759-CCA-R3-CD, 2008 WL 4368240; State v. Rice, Medina App. No. 02CA002-M, 2002-Ohio-5042 at ¶ 24.[" While Mr. Rice does have the right not to incriminate himself, this right does not entitle him to knowingly convey a drug of abuse onto the grounds of a detention facility, in violation of R.C. 2921.36(A)(2). By committing such a criminal act, Mr. Rice could be charged accordingly"].
 {¶ 26} The testimony at trial, as well as the videotape of the booking process admitted at trial, established that appellant denied, when asked by the booking officer, having any weapons or contraband upon him as he was entering the jail.
 {¶ 27} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the offense of illegal conveyance of weapons onto the grounds of a detention facility.
 {¶ 28} We hold, therefore, that the state met its burden of production regarding illegal conveyance of weapons onto the grounds of a detention facility and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 29} Appellant was also convicted of having a weapon while under a disability.
 {¶ 30} Appellant stipulated to his prior conviction of aggravated robbery and that he was under a disability in February 2008. Appellant challenges his conviction for *Page 10 
having a weapon under disability arguing that it was his father's weapon and that his father brought it into the house. However, the offense of having a weapon under disability can be established by proving a defendant "possessed" a firearm.
 {¶ 31} Possession may be actual or constructive. State v. Haynes
(1971), 25 Ohio St.2d 264, 267 N.E.2d 787; State v. Hankerson (1982),70 Ohio St.2d 87, 434 N.E.2d 1362, syllabus. To establish constructive possession, the evidence must prove that the defendant was able to exercise dominion and control over the contraband. State v. Wolery
(1976), 46 Ohio St.2d 316, 332, 348 N.E.2d 351. Dominion and control can be proven by circumstantial evidence alone. State v. Trembly,137 Ohio App.3d 134, 738 N.E.2d 93. Constructive possession of a firearm exists when a defendant knowingly has the power and intention at any given time to exercise dominion and control over a firearm, either directly or through others. U.S. v. Clemis (6th Cir. 1993), 11 F.3d 597, certiorari denied, 511 U.S. 1094, 114 S.Ct. 1858, 128 L.Ed.2d 481. Furthermore, possession may be individual or joint. Wolery, 46 Ohio St.2d at 332,348 N.E.2d 351; County Court of Ulster County, New York v. Allen (1979),442 U.S. 140, 99 S.Ct. 2213. "[T]he government must present evidence to show some connection or nexus between the defendant and the firearm," which can be established by a showing that the defendant had"knowledge and access . . . [to the] firearm." United States v.Jameson, 478 F.3d 1204, 1209 (10th Cir.), cert. denied, ___ U.S. ___,128 S.Ct. 321, 169 L.Ed.2d 227 (2007). See, United States v. Bailey (6th Cir. 2009), No. 06-5576, ___ F.3d ___, 2009WL113561.
 {¶ 32} In the case at bar, appellant wrapped the weapon in a handkerchief and concealed it in a bathroom ceiling vent. When initially asked by officers where the gun *Page 11 
was, appellant told them he threw it away outside the residence. At that point in time, only the appellant knew where the gun was hidden and only the appellant had access to the weapon.
 {¶ 33} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of having a weapon while under a disability. We hold, therefore, that the state met its burden of production regarding each element of the crime and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 34} "A fundamental premise of our criminal trial system is that `the jury is the lie detector.' United States v. Barnard, 490 F.2d 907,912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959,94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the `part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' Aetna Life Ins. Co. v. Ward, 140 U.S. 76, 88,11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". United States v. Scheffer
(1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267.
 {¶ 35} Although appellant cross-examined the witnesses and argued that he did not "acquire" or "possess" the handgun, and further that he was not told by law enforcement officers that he would be charged with a separate offense if he did not disclose the presence of the weapons hidden on and about his person, in an attempt to convince the jury that he did not have any intent to commit the crime for which he was indicted, the weight to be given to the evidence and the credibility of the witnesses are *Page 12 
issues for the trier of fact. State v. Jamison (1990),49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
 {¶ 36} The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964),176 Ohio St. 61, 67, 197 N.E.2d 548.; State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992),79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991),61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 37} After reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the convictions. The jury did not create a manifest injustice by concluding that appellant was guilty of the crimes charged in the indictment.
 {¶ 38} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial.
 {¶ 39} The jury heard the witnesses, evaluated the evidence, and was convinced of appellant's guilt. *Page 13 
 {¶ 40} Accordingly, appellant's sole assignment of error is denied.
 {¶ 41} For the foregoing reasons, the judgment of the Stark County Court of Common Pleas is affirmed.
 Gwin, J., Farmer, P.J., and Wise, J., concur *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs to appellant. *Page 1