JOURNAL ENTRY AND OPINION
{¶ 1} Frank Turner appeals his conviction on charges of burglary, vandalism, theft and possession of criminal tools. He claims the jury's verdict was against the manifest weight of the evidence and that the trial judge erred in imposing more than the minimum sentence when he had never previously served a prison term. We affirm Turner's conviction, but vacate his sentence and remand for resentencing in accordance with State v. Foster.
(Citation omitted.)
 {¶ 2} The record reveals that sometime in the summer of 2004, the property located at 3277 Berkshire Road in Cleveland Heights went into foreclosure and the owners vacated the home. During the foreclosure process, the HUD management firm of Michaelson, Connor and Boul took control of the property and limited access to the home. For the next several months, the home remained vacant, with neighbors occasionally looking after the house and cutting the grass.
 {¶ 3} Shortly before 9:00 a.m. on the morning of January 22, 2005, Jay Middleton-Bey looked out the window of his Berkshire Road home and noticed a Buick parked outside the foreclosed home across the street. He noticed an African-American male cleaning snow off of the car. Mr. Middleton-Bey watched the man for several minutes and saw that after he had finished brushing off the snow, the man put the snow brush in the trunk and entered the foreclosed home. Several moments later, the man emerged carrying a plastic bag filled with piping, which he then placed in the trunk of the Buick. Mr. Middleton-Bey immediately called 9-1-1 and gave a description of a white Buick with a bungee cord used to fasten the trunk.
 {¶ 4} Officer Christopher Britton responded to the call and pulled over a car on Lee Road that matched the description of the white Buick. Officer Britton illuminated his overhead lights and activated his police siren, but the car failed to stop. The officer continued to follow the car as it turned off of Lee Road, and the car eventually pulled over.
 {¶ 5} When Officer Britton approached the car, he saw five long copper tubing pipes in plain view in the back seat of the car. After questioning, he identified the driver as Frank Turner. A license check led Officer Britton to discover that Turner was driving with a suspended license. Turner was immediately taken into custody, and the car was impounded. When Officer Britton performed a patdown on Turner before taking him into custody, he found a screwdriver with copper shavings.
 {¶ 6} A second Cleveland Heights police officer, Christopher Giordano, also responded to the call on January 22nd, and saw that Officer Britton had a car stopped on Lee Road. Officer Giordano also saw the copper tubing in the back seat of Turner's car, and found copper pipe, a glass can, a green duffel bag, and door handles in the trunk of Turner's car.
 {¶ 7} Following these events, Turner was indicted on one count of burglary, in violation of R.C. 2911.12; one count of vandalism, in violation of R.C. 2909.05; one count of theft, in violation of R.C. 2913.02; and one count of possession of criminal tools, in violation of R.C. 2922.24. Following a jury trial, Turner was found guilty on all counts. The case then proceeded to sentencing where the trial court imposed a two-year sentence on count one, and six months on each of the remaining three counts. All sentences were to run concurrent for an aggregate sentence of two years. Turner appeals from this conviction in the assignments of error set forth in the appendix to this opinion.
 {¶ 8} In his first assignment of error, Turner asserts error in the trial court's failure to grant his motion for acquittal; or, in other words, challenges the sufficiency of the evidence. In his second assignment of error, Turner also challenges his conviction as being against the manifest weight of the evidence. For purposes of appeal, and because Turner puts forth the same arguments for both assignments, we address these assignments of error together.
 {¶ 9} Crim.R. 29(A) provides that:
"The court on motion of a defendant or on its own motion,after the evidence on either side is closed, shall order theentry of a judgment of acquittal of one or more offenses chargedin the indictment, information, or complaint, if the evidence isinsufficient to sustain a conviction of such offense or offenses.The court may not reserve ruling on a motion for judgment ofacquittal made at the close of the state's case."
 {¶ 10} The same standard of review that is applied to a challenge to the sufficiency of evidence is also applied to a denial of a motion for acquittal pursuant to Crim.R. 29. Statev. Ready (2001), 143 Ohio App.3d 748, 759.
 {¶ 11} When presented with a challenge to the sufficiency of the evidence, the Ohio Supreme Court in State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, delineated the role of an appellate court as follows:
"An appellate court's function when reviewing the sufficiencyof the evidence to support a criminal conviction is to examinethe evidence admitted at trial to determine whether suchevidence, if believed, would convince the average mind of thedefendant's guilt beyond a reasonable doubt. The relevant inquiryis whether, after viewing the evidence in a light most favorableto the prosecution, any rational trier of fact could have foundthe essential elements of the crime proven beyond a reasonabledoubt." Jackson v. Virginia (1979), 443 U.S. 307.
 {¶ 12} Whether the evidence is legally sufficient is a question of law, not fact. State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52. In determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v.Virginia, supra at 319. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v. Yarbrough,95 Ohio St.3d 227, 2002-Ohio-2126; State v. Thomas (1982),70 Ohio St.2d 79, 80. A verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh,90 Ohio St.3d 460, 484, 2001-Ohio-4; Jenks, supra, at 273.
 {¶ 13} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings which it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has "lost its way." State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. As the Ohio Supreme Court declared:
"Weight of the evidence concerns `the inclination of thegreater amount of credible evidence, offered in a trial, tosupport one side of the issue rather than the other. It indicatesclearly to the jury that the party having the burden of proofwill be entitled to their verdict, if, on weighing the evidencein their minds, they shall find the greater amount of credibleevidence sustains the issue which is to be established beforethem. Weight is not a question of mathematics, but depends on itseffect in inducing belief.' Id. at 387, quoting Black's LawDictionary (6 ED. 1990) 1594.
 * * * The court, reviewing the entire record, weighs theevidence and all reasonable inferences, considers the credibilityof witnesses and determines whether in resolving conflicts in theevidence, the jury clearly lost its way and created such amanifest miscarriage of justice that the conviction must bereversed and a new trial ordered. The discretionary power togrant a new trial should be exercised only in the exceptionalcase in which the evidence weighs heavily against theconviction.'" Thompkins, 78 Ohio St.3d at 387. (Internalcitations omitted.)
 {¶ 14} However, this court should be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact, and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the State has proven the offense beyond a reasonable doubt. State v. DeHass (1967),10 Ohio St.2d 230, at paragraphs one and two of the syllabus. The goal of the reviewing court is to determine whether the new trial is mandated. A reviewing court should only grant a new trial in the "exceptional case in which the evidence weighs heavily against a conviction." State v. Lindsey, 87 Ohio St.3d 479,483, 2000-Ohio-465.
 {¶ 15} Turner contends that his conviction is supported by insufficient evidence since: the only eye-witness to the alleged incident, Mr. Middleton-Bey, could not identify Turner; the burglary charge specifically required testimony that the Berkshire Road house was an "occupied structure, the property of Michaelson, Connor Boul * * *," and no such testimony was provided; and finally, that there was no testimony that the record title holder, Robert Arrington, did not give Turner permission to enter the premises.
 {¶ 16} First, although Turner now challenges the indictment itself as incorrectly listing the residence as the property of Michaelson, Connor Boul when the home was titled in the name of Robert Arrington, he never challenged the sufficiency of the indictment before trial. Under Crim.R. 12(C), "defenses and objections based on defects in the indictment" must be raised before trial. As stated in Crim.R. 12(H), "failure by the defendant to raise defenses or objections" within the time required "shall constitute waiver of the defenses or objections," although the court may grant relief from the waiver. State v.Williams (1977), 51 Ohio St.2d 112, 117; State v. Carter
(2000), 89 Ohio St.3d 593, 598, 2000-Ohio-172. Even if Turner had not waived this argument, there was sufficient testimony that Michaelson, Connor Boul acted on behalf of HUD and, since the house had been vacated by the record title holder, the lienholders had a fiduciary interest in the property to control access. Tr. at 255-256. As such, Michaelson, Connor Boul had exclusive control over the property and had an interest in the property on behalf of the recognized lienholder.
 {¶ 17} Further, the agent for Michaelson, Connor Boul testified that HUD had exclusive control of the property and that not even the record title owner, Robert Arrington, would have access to the property. Tr. at 192. The agent also testified that Mr. Arrington could not have an agent of his or allow anyone access to the property. Tr. at 192. Finally, the court heard the following testimony regarding any alleged access by Turner:
Q: Are you aware of anyone giving the Defendant, Mr. FrankTurner, access to this property?
 A: No, sir.
 Q: You didn't receive an order from HUD to allow Mr. FrankTurner to enter this property?
 A: No, sir.
Tr. at 193.
 {¶ 18} Second, any challenge to Mr. Middleton-Bey's testimony as insufficient to support a conviction of burglary lacks merit. Mr. Middleton-Bey witnessed an African-American male enter and exit the Berkshire Road property. He saw this same individual carrying copper piping from the home and place the items in a white Buick with the trunk fastened by a bungee-cord type device. Although Mr. Middleton-Bey admitted that it was snowing heavily the day of the incident and could not describe any of the man's facial features, each fact attested to by Mr. Middleton-Bey was supported by the testimony of Officer Britton who detained Turner approximately one-half mile from Berkshire Road, driving a white Buick with a trunk held down with a wire-type cord, and having copper piping in plain view of Turner's car. We therefore find the testimony sufficient to support Turner's conviction.
 {¶ 19} As to Turner's next claim that the Berkshire home does not fit the requirement of an "occupied structure" under R.C.2909.01(C), we find that the Berkshire home qualifies as such an occupied structure. As held in State v. Green (1984),18 Ohio App.3d 69, "[a] structure which is dedicated and intended for residential use, and which is not presently occupied as a person's habitation, but, which has neither been permanently abandoned nor vacant for a prolonged period of time, can be regarded as a structure `maintained' as a dwelling within the meaning of R.C. 2909.01(A). That definition includes a dwelling house whose usual occupant is absent on a prolonged basis or is receiving long-term care in a nursing home, a summer cottage, or a residential rental unit which is temporarily vacant." Id. at paragraph one of syllabus.
 {¶ 20} As noted by the trial court, testimony at trial revealed that the Berkshire Road home was a residential home on a residential street. Tr. at 306. Although the home was in foreclosure, and the record title holder was not living at the home, there is no evidence that the property had been permanently abandoned. Instead, testimony revealed that the property was under the control of HUD, and that Michaelson, Connor Boul was actively managing the property for HUD. Tr. at 158-161. In addition, Mr. Middleton-Bey testified that both he and other neighbors looked after the house and mowed the grass. Tr. at 128. Therefore, the testimony at trial was replete with evidence that the residence had not been permanently abandoned, and that neighbors were monitoring the property. As such, the structure could qualify as an occupied structure.
 {¶ 21} Turner additionally asserts that there was no testimony that the value of the copper piping exceeded $500, as statutorily required for a third degree felony. We disagree. Richard Wagner, Manager of Housing Programs for the City of Cleveland Heights, testified that the Berkshire Road home had visible damage of $3500. Tr. at 250. He also testified that to re-plumb the missing copper piping in the basement would cost approximately $1500, with the material alone costing $500. Tr. at 250-251. While defense counsel set forth some examples of copper pipe pricing from Home Depot that some witnesses agreed with, these lower estimates did not include labor or repair work to the ceilings and walls based upon the damage done when removing the copper piping.
 {¶ 22} Finally, Turner broadly asserts that there was no testimony to support his vandalism conviction. R.C. 2909.05
states in relevant part that:
(A) No person shall knowingly cause serious physical harm toan occupied structure or any of its contents.
 (B) (1) No person shall knowingly cause physical harm toproperty that is owned or possessed by another, when either ofthe following applies:
 (a) The property is used by its owner or possessor in theowner's or possessor's profession, business, trade, oroccupation, and the value of the property or the amount ofphysical harm involved is five hundred dollars or more;
 (b) Regardless of the value of the property or the amount ofdamage done, the property or its equivalent is necessary in orderfor its owner or possessor to engage in the owner's orpossessor's profession, business, trade, or occupation.
 {¶ 23} It is clear from the above analysis that the Berkshire Road property had damage in an amount ranging between $500 and $3500, and that the residence qualified as an occupied structure that was owned or possessed by someone other than Turner. For these reasons, the record contained sufficient evidence to support Turner's conviction of vandalism, and that Turner's conviction was supported by the manifest weight of the evidence.
 {¶ 24} Turner's first and second assignments of error lack merit.
 {¶ 25} In his final assignment of error, Turner contends that although the trial court properly referenced his previous criminal record, it failed to find that he had previously served a prison sentence. He claims that the trial court ignored the fact that he had not served a prior sentence, and was entitled to the minimum term of incarceration.
 {¶ 26} The Ohio Supreme Court, in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, has held that certain provisions of Ohio's felony sentencing scheme, including R.C. 2929.14(B), which governs the imposition of more than minimum prison terms, violateBlakely v. Washington (2004), 542 U.S. 296. Specifically, the Supreme Court held that because a trial court is not authorized to exceed the shortest prison term under R.C. 2929.14(B) unless it makes additional findings, and "since a jury verdict alone does not determine the sentence, R.C. 2929.14(B) violates Blakely principles." Foster at 61. The court then severed R.C.2929.14(B) from the sentencing statutes based on its finding thatBlakely, supra, rendered it unconstitutional. Id. at 97. Therefore, a trial court is no longer obligated to give reasons or findings prior to imposing more than the minimum sentence. Id. at 99. The holding in Foster, supra is applicable only to cases pending on direct review, and such cases must be remanded to trial courts for new sentencing hearings. Id. at paragraph 104.
 {¶ 27} For these reasons, we vacate Turner's sentence and remand for a resentencing hearing.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds that there were reasonable ground for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Gallagher, P.J., and Rocco, J., concur.
 APPENDIX ASSIGNMENTS OF ERROR "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FORACQUITTAL AS TO THE CHARGES.
 II. APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OFTHE EVIDENCE.
 III. THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO MORETHAN THE MINIMUM PRISON SENTENCE [SIC] THE COURT DID NOT MAKE AFINDING THAT HE HAD NOT PREVIOUSLY SERVED A PRISON TERM."