[Cite as *State v. Creighton*, 2011-Ohio-5919.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95607**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DEONDRAY CREIGHTON

DEFENDANT-APPELLANT

**JUDGMENT:**
**AFFIRMED IN PART, REVERSED IN PART,**
**REMANDED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-527332

**BEFORE:** Rocco, J., Stewart, P.J., and Sweeney, J.

**RELEASED AND JOURNALIZED:** November 17, 2011

**ATTORNEYS FOR APPELLANT**

Andreas Petropouleas
Oscar E. Rodriguez
John W. Martin Co., & Associates, L.P.A.
75 Public Square
Suite 1414
Cleveland, Ohio   44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:    Marc D. Bullard
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

KENNETH A. ROCCO, J.:

{¶ 1}   Defendant-appellant, Deondray Creighton, appeals from his convictions for drug trafficking, drug possession, tampering with evidence, illegal cultivation of marijuana, carrying a concealed weapon, possessing criminal tools, and having a weapon while under disability, with firearm specifications and from the sentences imposed for those convictions.

{¶ 2}   Appellant presents four assignments of error.  First, he argues the trial court erred in denying his motion to suppress the warrantless search of his co-defendant's

residence. Next, he asserts his convictions are unsupported by sufficient evidence and the manifest weight of the evidence. Finally, appellant argues the trial court improperly sentenced him to consecutive sentences.

{¶ 3} Upon a review of the record, we affirm the trial court's denial of his motion to suppress. We, likewise, affirm his conviction for tampering with evidence. We, however, reverse his convictions for drug trafficking in Ecstasy, drug possession in Ecstasy, drug possession in marijuana, illegal cultivation of marijuana, possession of criminal tools, carrying a concealed weapon, having a weapon while under a disability, and firearm specifications. Consequently, we affirm in part, reverse in part and remand for proceedings consistent with this opinion.

{¶ 4} On August 11, 2009, appellant was included in a twelve count indictment with co-defendants, Deangelo Freeman and Lashawn Atkinson. The following ten of the twelve counts pertained to appellant and charged him as follows: Count 1 drug trafficking in violation of R.C. 2925.03(A)(1); Count 2 drug trafficking in violation of R.C. 2925.03(A)(2); Count 3 drug possession of Ecstasy in violation of R.C. 2925.011(A); Count 4 tampering with evidence in violation of R.C. 2921.12(A)(1); Count 5 illegal cultivation of marijuana in violation of R.C. 2925.04(A); Count 6 drug trafficking in violation of R.C. 2925.03(A)(2); Count 7 drug possession of marijuana in violation of R.C. 2925.11(A); Count 9 having a weapon while under a disability in violation of R.C. 2923.13(A)(2); Count 11 carrying a concealed weapon in violation of

R.C. 2923.12(A)(2); and Count 12 possession of criminal tools in violation of R.C. 2923.24(A). Each count contained numerous forfeiture specifications and Counts 1, 2, 3, 5, 6, and 7 contained a one-year firearm specification. Additionally, Counts 1, 2, 5, and 6 contained a schoolyard specification. Appellant, however, was not indicted for possession of four Ecstasy pills recovered from his suitcase.

{¶ 5} Following indictment, appellant and co-defendant Freeman filed motions to suppress the evidence seized at a residence located at 1253 East 89th Street in Cleveland, Ohio and any statements made thereafter. Co-defendant Atkinson also filed a motion but seeking suppression of the evidence seized from his person and his automobile. The court held a hearing regarding both motions on September 22, 2009. Following the hearing, the trial court denied all motions to suppress and the case proceeded to a joint jury trial on July 12, 2010. Prior to trial, appellant waived his right to a jury regarding Count 9 (the weapon disability count).

{¶ 6} At both the suppression hearing and trial, the following evidence was introduced. Detective Joseph Zickes testified that on February 28, 2008, the Cuyahoga County Sheriff's Department had obtained a confidential informant, who shortly before trial was identified as Delaneo Franklin ("Franklin"). Franklin told police that he could make a controlled purchase of a large amount of Ecstasy from "Alo," later identified as the co-defendant DeAngelo Freeman, who resided at 1253 East 89th Street in Cleveland, Ohio. Detective Zickes explained that Franklin became an informant after he was

arrested for participating in a buy of a small amount of drugs. In exchange for his work that very same day as a confidential informant, the state agreed to make a deal with him regarding the small drug buy.

{¶ 7} Franklin further informed detectives that a Black Cadillac Escalade was frequently parked in front of the house. After conducting surveillance of the house and noticing the Escalade, the sheriff's detectives were satisfied with Franklin's reliability. At which point, police decided to perform a controlled purchase at that address.

{¶ 8} The members of the Cuyahoga County Sheriff's Unit and Franklin then made arrangements for the controlled buy at the 89th Street residence. The detectives searched Franklin for contraband, outfitted him with a recording transmitter, and provided $500, which had been photocopied, to purchase 100 pills of Ecstasy. At some point, Franklin made a phone call to "Alo" to schedule a drug buy of 100 Ecstasy pills at Freeman's residence. Detectives recorded this phone conversation.

{¶ 9} During preparation of Franklin, Detective Zickes along with Detective Timothy O'Connor proceeded to the 89th Street residence. Lt. Caraballo arrived a short while later with Franklin and he was placed in a nearby vehicle with Detective Shaffer. Thereafter, Franklin remained under constant visual surveillance.

{¶ 10} A short while after arriving at the 89th Street residence, Detective Zickes, Detective O'Connor, and Lt. Caraballo witnessed Lashawn Atkinson exit the target

house, enter the Escalade parked in front, and drive away. The deputies then stopped the Escalade on MLK Boulevard for a traffic violation.

{¶ 11} Following Atkinson's stop and subsequent arrest, the detectives returned to the 89th Street residence. Franklin knocked on the door of the 89th Street house, but no one answered. He then used a cell phone to call Freeman and the conversation was recorded. During the conversation, Freeman indicated he was aware of the traffic stop of Atkinson and seemed nervous about police presence in the area. After some discussion, Franklin convinced Freeman that police were not present and shortly thereafter a white vehicle pulled into the driveway. Freeman and appellant exited and all three entered the house, although apparently not at the same time because Franklin did not know appellant was in the house.

{¶ 12} The detectives listened via the transmitter as the controlled buy occurred. Instead of waiting for Franklin to leave the E. 89th Street residence with pills in hand, when the detectives heard money being counted and a description of the Ecstasy, they immediately proceeded to the front door to apprehend Freeman. At the same time, Franklin had walked to the front door and was about to exit when Freeman saw the detectives on the porch about to enter the home. Freeman slammed the interior door shut and locked it.[1] Also, on the outside of the front door was an exterior iron security door

---

[1]At oral argument both sides conceded that there is no evidence in the record Franklin (CI) was in danger. Indeed, Franklin was trying to leave the residence with the pills in hand when the detectives were on the front porch trying to enter the residence.

that was shut and locked. The detectives then heard Franklin shout "flush the shit." Franklin testified that following the detectives arrival, Freeman grabbed the Ecstasy from Franklin and ran upstairs.

{¶ 13} Unable to enter the home, the detectives smashed through a front window and gained entry without a warrant. Detective Zickes testified that once inside, he saw Freeman coming down the stairs from the second floor and apprehended him. Another detective observed Freeman at the bottom of the stairs and Franklin about half-way up the stairs to the second floor.

{¶ 14} On the second floor in the bathroom, the detectives found appellant sitting on a toilet in which the water had been running as if it had been recently flushed. The detectives believed that 100 Ecstasy pills had been flushed down the toilet, and they attempted to preserve the evidence by first removing appellant from the toilet seat and then breaking the main stack of the toilet connecting the toilet to the sewer systems. The detectives did not search inside the stack, but rather, chose to await a search warrant.

{¶ 15} Additionally, while conducting a protective sweep of the premises, detectives observed in plain view in two upstairs bedrooms sophisticated marijuana grow labs consisting of numerous marijuana plants. The detectives then secured the premises and gathered the individuals in the first floor living room.

{¶ 16} In the living room, detectives identified the three individuals located in the house at the time of the drug buy, Franklin, Freeman and appellant, and patted them

down. During the pat-down, the detectives found the buy money in Freeman's pant pocket. Both Freeman and appellant were then arrested. After securing the premises and the individuals involved, the detectives did not further search the premises. Rather, they awaited the arrival of Detective O'Connor and Lt. Caraballo, who left to prepare a warrant to search the premises.

{¶ 17} After Freeman was read his Miranda rights by both Detective Zickes and Lt. Caraballo, he acknowledged that his DNA would be on the Ecstasy pills if discovered. He further provided that he resided at the 89th Street residence. When questioned about a gun case in plain view, Freeman also admitted that a gun was located in the residence.

{¶ 18} Once Detective O'Connor and Lt. Caraballo obtained a warrant, they returned to the 89th Street residence to search the premises. Detectives discovered two elaborate marijuana growing labs that contained numerous potted marijuana plants, grow lights, boxes of ductwork used for ventilation in growing operations, plant food, and chemicals. The search of the premises also revealed little plastic baggies with residue on them in the kitchen trash bags, baggies with Ecstasy pills inside, cell phones, a digital scale, a large amount of cash, a Glock handgun, magazines of ammunition, and miscellaneous papers, including a gas bill for the 89th Street residence in Atkinson's name. Additionally, detectives discovered a suitcase belonging to appellant containing two cell phones, photographs, four Ecstasy pills, a Viagra pill, and a lease for another residence in his name. The Ecstasy pills purchased by Franklin were never retrieved

from the house or its occupants. It is also important to note that Franklin did not know of the appellant or even know that someone other than Freeman was in the house at the time of the sale.

{¶ 19} Following the arrest of appellant and Freeman, Detective Miller testified, that he placed the two in the back of a vehicle, unbeknowst to them, that was equipped with a recording device. During this time, appellant chided Freeman for telling the detectives the location of the Glock handgun.

{¶ 20} Appellant testified on his own behalf at the suppression hearing only. He testified that Freeman is his nephew and the two were returning to the 89th Street residence so that appellant could use the restroom, that the previous evening, he and his girlfriend argued and he stayed the night at Freeman's residence, that his suitcase, which was later discovered by the detectives, contained some clothes, his passport, a lease to his old house, photographs, and his college degree, that he was planning on returning to his girlfriend's house before detectives broke into the residence, that he was not aware of any drugs or any other contraband in the house, that he was relieving himself on the tiolet when the detectives arrived, and that he was ordered off the toilet and "stomped on" before he could comply with their order.

{¶ 21} The jury found appellant not guilty of all the schoolyard specifications and of the drug trafficking charge in Count 6. The jury, however, found appellant guilty of

all other charges, all firearm specifications, and all forfeiture specifications. The court then found appellant guilty of having a weapon while under a disability.

{¶ 22} The trial court thereafter sentenced appellant to a prison term totaling ten years. More specifically, the court merged Counts 1, 2, and 3, finding them allied offenses of each other. Likewise, the court merged Counts 5 and 7. The court also merged all the one-year firearm specifications and ordered them to be served prior to and consecutive with the following: concurrent terms of five years for Counts 1, 2, 3, and 4; four years on Count 9 to be served consecutively to the firearm specification and the other convictions; and a concurrent term of one year for counts 5, 7, 11, and 12.

{¶ 23} Appellant appeals from his convictions and sentences with four assignments of error.

{¶ 24} "**I. The trial court erred when it denied the defendant Deondray Creighton's motion to suppress as the warrantless search of the premises violated the Fourth Amendment as there was no probable cause for the search and seizure and the exigent circumstances cited by sheriffs cannot be justified as they were of their own making.**

{¶ 25} "**II. The appellant's convictions are not supported by sufficient evidence.**

{¶ 26} "**III. The appellant's convictions are against the manifest weight of the evidence.**

**{¶ 27} "IV.    The trial court erred when it imposed consecutive sentences without making findings required under R.C. 2929.13(E) of the Ohio Revised Code."**

{¶ 28} Appellant argues in his first assignment of error that the trial court erred in not granting his motion to suppress because the detectives did not have exigent circumstances to enter the 89th Street residence other than those created by themselves. For the reasons stated in the appellate opinion in *State v. Freeman*, Cuyahoga App. No. 95608, 2011-Ohio-5651, regarding the exact same assigned error, we find appellant's argument without merit and overrule his first assignment of error.

{¶ 29} Appellant argues in his second and third assignments of error that his convictions are not supported by the sufficient evidence or the manifest weight of the evidence.   There is circumstantial evidence from which the jury could infer that appellant tampered with evidence, either by receiving the Ecstasy pills from Freeman or Franklin and flushing the pills down the toilet stack, or, in an effort to impede the discovery of the pills, sitting on the toilet seat after Freeman or Franklin flushed the pills.   Other than this circumstantial evidence, there is scant, little evidence to tie appellant to Freeman's criminal activities.   At best, there is circumstantial evidence that appellant was an "accessory after the fact" of the sale of the pills, which conduct was indicted as tampering with evidence.

{¶ 30} In reviewing a challenge based upon sufficiency, this court must examine the evidence presented at trial to determine whether, if believed, the evidence would

convince the average mind of the accused's guilt beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. The evidence must be viewed in the light most favorable to the prosecution. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Sufficiency is a question of law; the trial court determines whether the state has met its burden to produce evidence on each element of the crime charged. Id.

{¶ 31} In considering a challenge to the manifest weight of the evidence, the reviewing court examines the entire record, weighs the evidence and all reasonable inferences, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶81. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. Moreover, this court must remain mindful that the weight of the evidence and the credibility of the witnesses are matters primarily for the jury to assess. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.

{¶ 32} When viewed in a light most favorable to the prosecution, the evidence in this case supported appellant's conviction for tampering with evidence. As the detectives were breaking into the residence, they heard Franklin, the CI, shout "flush the shit" and later heard running water from a toilet, and within minutes discovered appellant

sitting on the tiolet. Additionally, Franklin informed the detectives that Freeman grabbed the 100 pills of purchased Ecstasy from him and took them upstairs where appellant was located only to return downstairs without the drugs. In light of the foregoing, the jury could infer that appellant tampered with evidence.

{¶ 33} Also, appellant's conviction for tampering with evidence is not against the manifest weight of the evidence. In support of its case, several detectives provided a consistent story that they heard the toilet flushing or running water from the toilet and found appellant sitting on the toilet seat. Additionally, Franklin testified that Freeman ran upstairs with the Ecstasy pills and came back downstairs without them. The detectives never found the Ecstasy pills. Finally, appellant did not offer evidence at trial to rebut the state's version of the events. Accordingly, we find appellant's conviction for tampering with evidence not against the manifest weight of the evidence.

{¶ 34} The evidence, however, is insufficient to sustain appellant's various other convictions. With regard to the convictions for drug trafficking and drug possession of Ecstasy in an amount five times bulk but less than fifty, we find the state was unable to establish that appellant had any specific involvement in the drug sale of the Ecstasy pills. Franklin and Freeman never mentioned appellant during any of their phone conversations. Additionally, during the drug transaction inside the 89th Street residence, the testimony indicated appellant was upstairs the entire time. Appellant was never heard speaking during any of the audio recordings, including the recording of the drug buy. Moreover,

there was no indication that appellant had an extended stay in the house. Rather, his suitcase and its contents indicated appellant resided somewhere else and was there for a brief duration. Finally, Franklin testified that he did not know appellant prior to the evening of this incident and did not even know appellant was in the house at the time of the drug buy. In light of the foregoing, we cannot conclude that there was sufficient evidence supporting appellant's convictions for drug trafficking in 100 pills of Ecstasy or possession of said drugs.

{¶ 35} Likewise, for the same aforementioned reasons, the state was unable to establish that appellant knew of and had an active participation in the illegal cultivation of marijuana or possession of marijuana.

{¶ 36} Moreover, there was no evidence whatsoever that the cell phones that could be linked to appellant were used for criminal purposes. The mere possession of cell phones, not connected to criminal activity, alone is insufficient to sustain a conviction for possession of criminal tools. As we have previously noted, "[t]he ubiquitousness of cell phones is such that the mere possession of a cell phone is not ipso facto proof that it was used in drug trafficking." *State v. Byers*, 8th Dist. No. 94922, 2011-Ohio-342, ¶9.

{¶ 37} Finally, with regard to the weapon under a disability and carrying a concealed weapon convictions, the detectives recovered a Glock handgun from a console of the couch in Freeman's residence after Freeman told them where the handgun was located. Appellant was never found with a firearm on his person or under his control.

The house was owned by Freeman, not appellant. One weapon retrieved from Freeman's 89th Street residence can be linked to only one individual, Freeman. Thus, we reverse appellant's convictions for having a weapon while under a disability, carrying a concealed weapon, and the one-year firearm specifications.

{¶ 38} In light of our decision reversing all of appellant's convictions except for his conviction for tampering with evidence, we decline to address his final assignment of error challenging the validity of the trial court's sentence as moot.

{¶ 39} In summary, we affirm appellant's conviction for Count 4, tampering with evidence, and reverse all remaining counts and specifications and remand for resentencing.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for further proceedings.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KENNETH A. ROCCO, JUDGE

JAMES J. SWEENEY, J., CONCURS;

MELODY J. STEWART, P.J., CONCURS IN JUDGMENT ONLY