[Cite as *State v. Collins*, 2012-Ohio-2452.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Sheila G. Farmer, J. |
| -vs- | : | |
| | : | Case No. 11CAA090082 |
| JOSEPH R. COLLINS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Delaware County Court of
Common Pleas, Case No. 10 CR 1 02
0117

JUDGMENT: AFFIRMED

DATE OF JUDGMENT ENTRY: May 23, 2012

APPEARANCES:

For Appellant:

DOMINIC L. MANGO
Mango Law LLC
P.O. Box 483
Delaware, OH 43015

For Appellee:

CAROL HAMLTON O'BRIEN
DELAWARE CO. PROSECUTOR
BRIAN J. WALTER
140 North Sandusky St., 3rd Floor
Delaware, OH 43015

*Delaney, J.*

{¶1} Appellant Joseph Collins appeals from the judgment entry of conviction and sentence entered in the Delaware County Court of Common Pleas on July 19, 2011. Appellee is the State of Ohio.

### FACTS AND PROCEDURAL HISTORY

{¶2} This appeal is related to *State v. Johathon Collings,* Case Number 11CAA070064. Appellant and Jonathon Collins are father and son, respectively, and co-defendants.

### The Van and its Contents

{¶3} This case arose on June 20, 2009, at 4:56 a.m. Officer James Ailes of the Delaware Police Department was on routine patrol when he noticed a red minivan parked at the side of the road at the intersection of Hull Drive and Liberty Road, Delaware. Four males were outside the van; one stood on the driver's side near the door, and three stood near the rear passenger door. Ailes could not see what they were doing but found the activity to be unusual for the hour.

{¶4} Ailes pulled up to the van and made contact with the driver, identified as Shane Copelan. Copelan said he was tired and had wanted to pull over and stop. Ailes radioed his location to dispatch and started to get out of his cruiser. As he got out, Copelan walked around to the rear of the van where the other three males stood. Ailes noticed a set of red bolt cutters on the roadway under the rear hatch of the van.

{¶5} Ailes requested backup and asked the individuals to sit on the ground. The four were identified as Copelan, appellant, Jonathon Collins, and his brother (and appellant's son) Jason Collins.

{¶6}  Trooper Glasscox drove by as Ailes spoke with the individuals and stopped to offer assistance.

{¶7}  Ailes and Glasscox investigated the scene.   Dispatch advised Ailes Jonathon Collins had an active arrest warrant and he was taken into custody.  Ailes noticed a piece of copper wire lying in the grassy area between the sidewalk and the roadway, next to the van.  Glasscox walked around the outside of the van and in plain view observed a large amount of cut copper in the back of the van.

{¶8}  The van was later inventoried and found to contain four sections of cut copper, a 25-foot piece of braided copper, and miscellaneous pieces of fencing, small copper pieces, clamps, and trash.   The four cut sections of copper were each approximately four feet long.  The 25-foot piece of braided copper was covered in dirt and debris as though it had been buried in the ground.    All of these items, and the red bolt cutters, were photographed.

{¶9}  Police learned Shane Copelan's girlfriend Jennifer Fleming owned the van.  Fleming came to the property storage lot and retrieved it.  Initially no charges were filed and the copper was tagged and placed into evidence.

{¶10} Appellant was the only participant who offered any information about the source of the copper.  He claimed some of it came from a burnt-down grocery store in Columbus and some of it came from his aunt's barn in Lancaster.  Appellant further stated Jonathon and Jason Collins were with him when he obtained the copper, but Shane Copelan was not.

{¶11} Ailes contacted surrounding law enforcement agencies and railroads in an attempt to discover the source of the copper, with no results.

*The Fire at the AEP Substation*

{¶1}   When Ailes came upon the Collinses and the minivan, they were one-tenth of a mile from an American Electric Power (AEP) substation located at 1738 Liberty Road, Delaware.

{¶2}   Less than a day later, at midnight on June 21, 2009, Ailes responded to a fire at the Liberty Road AEP substation.  Ailes worked traffic at the fire because Liberty Road had to be closed.

{¶3}   At 2:43 a.m., Ailes returned to the Liberty Road AEP substation for a report of breaking and entering.  Technicians had investigated the fire and discovered evidence of a break-in, including a gate which had been cut and missing copper "grounds."

{¶4}   Ailes responded and noticed the bolt on the gate appeared to have been cut with bolt cutters.  He also observed an area of dirt where cable had been pulled out of the ground.

{¶5}   Ailes immediately suspected the break-in and fire were related to the Copelan/Collins stop.  He brought an AEP technician to the evidence room to view the copper recovered from the minivan.  Ailes and the technician were able to line up the cut sections of copper recovered from the van with the missing portions stolen from the Liberty Road substation.

{¶6}   Ailes met with Copelan and told him about the AEP substation break-in. Copelan now told him he had dropped off the Collinses around the intersection of Hull and Liberty.  Soon after, they called him to come pick them up and now they had the copper with them.

{¶7}   Jay Davis is a servicer of AEP substations and testified for appellee at trial.   Davis investigated the fire on June 21, 2009; when he arrived, he found one regulator was on fire.  He de-energized the circuits and put the fire out.

{¶8}   Davis looked for the cause of the fire and discovered several "grounds" had been cut and removed.  "Grounds" are made of copper wire and function to return power.  Removal of the ground wires may not immediately cause a fire, but eventually fire will result.  Davis opined the fire was caused by the cutting and removal of the ground wires.

{¶9}   At the time of these events, there had been many similar copper thefts from AEP substations.  Two AEP witnesses noted the thefts commonly involved the same wires: those in locations thieves could easily access.

{¶10} AEP substation supervisor Michael Coffey also testified at trial.  Coffey was responsible for investigating the damage at the Liberty Road substation and for setting up a work order to track the necessary repairs.  Coffey noted because of the theft, a power outage lasting approximately 23 minutes occurred and a circuit had to be removed from service.  The fire and resulting repair operations created at least one outage for AEP customers in 270 households.

{¶11} Coffey agreed the fire started because it "lost its grounds;" removing the copper grounds created a heating effect which began to smolder and eventually resulted in a fire.

{¶12} Although Coffey did not factor the AEP customers' power outage into the cost of the theft, he was able to calculate the amount of the loss to AEP based upon replacement materials and labor.  The total cost was $8,010.32.

*Criminal Charges and Two Bench Trials*

{¶13} Copelan, Jonathon Collins, Jason Collins and appellant were each charged by indictment with one count of vandalism in an amount greater than $5000 but less than $100,000, a felony of the fourth degree [R.C. 2909.05(B)(1)(b)], one count of possession of criminal tools [R.C. 2923.24(A)], one count of theft in an amount greater than $500 but less than $5000, a felony of the fifth degree [R.C. 2923.24(A)], one count of breaking and entering, a felony of the fifth degree [R.C. 2911.13(B)], one count of disrupting public service, and one count of receiving stolen property in an amount greater than $500 but less than $5000, a felony of the fifth degree [R.C. 2913.51(A)].

{¶14} Copelan ultimately entered pleas of guilty on October 8, 2010, and was sentenced on January 24, 2011.

{¶15} Jason Collins' case was transferred to a visiting judge, who presided over a bench trial and acquitted Jason Collins of all charges on January 6, 2011.

{¶16} On January 18, 2011, appellant and Jonathon Collins moved to dismiss their indictments, arguing the state had fully litigated the case in Jason Collins' trial and was therefore precluded from trying the remaining co-defendants in a separate trial.  They argued further prosecution was barred by collateral estoppel and double jeopardy.

{¶17} The trial court overruled the motion to dismiss, noting neither appellant, nor Jonathon Collins, nor the state had moved to sever the trials; appellant never asserted that he should have been tried with Jason Collins; and the co-defendants never objected to the "*de facto* severance" of the trials.  The trial court ruled the

findings in Jason Collins' trial were specific to Jason Collins, and subsequent trial of appellant and Jonathon Collins was not barred by collateral estoppel, res judicata, or double jeopardy.

{¶18} Appellant and Jonathon Collins each waived his right to trial by jury, and the matters proceeded to a joint bench trial on April 27, 2011. Both were found guilty as charged on each count of the indictment, with the exception of Count Five, disrupting public services, for which each was found not guilty.

{¶19} The trial court found that Counts One, Three, and Six (vandalism, theft, and receiving stolen property) merged for purposes of sentencing, and appellee elected to sentence on Count One, vandalism. Appellant was sentenced to a prison term of 17 months on Count One, consecutive to a term of 11 months on Count Two (possession of criminal tools) and a consecutive term of 11 months on Count Six (breaking and entering). Appellant's aggregate sentence is consecutive to a sentence he is presently serving in a Franklin County case.

{¶20} Appellant appeals from the judgment entries of conviction and sentence.

{¶21} Appellant raises two Assignments of Error:

{¶22} "I. THE TRIAL COURT VIOLATED APPELLANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS, AND APPELLANT'S STATUTORY RIGHT TO BE TRIED TOGETHER WITH HIS JOINTLY INDICTED CODEFENDANTS UNDER R.C. 2945.13 AND CRIM.R. 14, BY ALLOWING APPELLANT'S CASE TO GO TO TRIAL AFTER THE INDICTMENT OF APPELLANT WAS ALREADY PRESENTED TO A TRIER OF FACT WHEN A CODEFENDANT HAD ALREADY BEEN SEPARATELY TRIED AND ACQUITTED OF ALL CHARGES."

{¶23} "II. THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S CRIM.R. 29(A) MOTION FOR ACQUITTAL ON THE GROUNDS THAT, EVEN WHEN VIEWED IN A LIGHT MOST FAVORABLE TO THE PROSECUTION, THE STATE HAD FAILED, AT THE CLOSE OF ITS EVIDENCE TO MEET ITS BURDEN ON ESSENTIAL ELEMENTS OF EACH CHARGE."

I.

{¶24} Appellant argues in his first assignment of error his trial was barred by the fact that codefendant Jason Collins was tried separately and acquitted.[1] We disagree.

{¶25} First, we note neither appellant nor counsel objected to the separate trial of co-defendant Jason Collins until after Jason Collins was tried and acquitted. We therefore review this claim under a plain error standard of review. *See, State v. Dunn,* 5th Dist. No. 2008-CA-00137, 2009-Ohio-1688, ¶ 89. Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The rule places several limitations on a reviewing court's determination to correct an error despite the absence of a timely objection at trial: (1) "there must be an error, i.e. a deviation from a legal rule," (2) "the error must be plain," that is, an error that constitutes an "obvious defect in the trial proceeding," and (3) the error must have affected "substantial rights" such that "the trial court's error must have affected the outcome of the trial." *State v. Morales*, 10 Dist. Nos. 03—AP-318, 03-AP-319, 2004-Ohio-3391, at ¶ 19, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *State v. Gross*, 97 Ohio St.3d 121,

---

[1] This is the same argument raised in Jonathon Collins' sole assignment of error in case number 11CAA070064.

2002-Ohio-5524, 776 N.E.2d 1061, ¶ 45. The decision to correct a plain error is discretionary and should be made "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Barnes*, supra, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶26} R.C. 2945.13 states, "When two or more persons are jointly indicted for a felony, except a capital offense, they shall be tried jointly unless the court, for good cause shown on application therefor by the prosecuting attorney or one or more of said defendants, orders one or more of said defendants to be tried separately."

{¶27} Crim.R. 8(B) provides that two or more defendants may be charged in the same indictment if they are alleged to have participated in the same series of acts constituting an offense, or in the same course of criminal conduct. The joinder of defendants and the avoidance of multiple trials are favored in the law because joinder "conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." *State v. Thomas*, 61 Ohio St.2d 223, 225, 400 N.E.2d 401 (1980).

{¶28} We note there was no application by a party to try the cases separately. The Supreme Court of Ohio assigned a visiting judge to hear 10CR-I-02-0117(C), *State of Ohio v. Jason A. Collins*. While the record leading to this assignment is not before us, in its entry overruling appellant's motion to dismiss, the trial court referenced "a standing objection the State of Ohio has raised regarding this court hearing cases in which [trial counsel of Jason Collins] is representing a defendant."

Due to a conflict of interest alleged by appellee, therefore, the trial court recused itself from the Jason Collins case.

{¶29} Whether an accused shall be tried separately from a co-defendant is a matter within the sound discretion of the trial court. *State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981). Generally, the burden is upon the defendant to show good cause why a separate trial should be granted and that the trial court abused its discretion in refusing to do so. *State v. Jacocks*, 5th Dist. No. 2002CA00359, 2003-Ohio-6839, ¶ 92, appeal not allowed, 102 Ohio St.3d 1445, 2004-Ohio-2263, 808 N.E.2d 397. A defendant claiming error in the trial court's refusal to sever offenses or defendants has the burden of affirmatively showing that his rights were prejudiced by the joinder. *State v. Vargas*, 5th Dist. No. 2001CA00044, 2002-Ohio-2478, citing *Torres*, supra.

{¶30} Appellant essentially argues for an extension of R.C. 2945.13 and Crim.R. 8: all three codefendants should have been tried together, and because one co-defendant was tried separately, first, trial of the remaining co-defendants is barred altogether. Appellant presents no case authority supporting such an extension, and more significantly, failed to raise this argument until *after* the first co-defendant had already been tried and acquitted.

{¶31} The record fails to disclose error, plain or otherwise. The trial court did not deviate from a legal rule in recusing itself from one co-defendant's case and trying the remaining two in a joint trial.

{¶32} Appellant's first assignment of error is overruled.

II.

{¶33} In his second assignment of error, appellant argues his presence at the van upon discovery by Ailes does not constitute sufficient evidence upon which to convict him of vandalism, possession of criminal tools, theft, breaking and entering, and receiving stolen property. We disagree, and find appellant's convictions are supported by sufficient evidence.

{¶34} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶35} The elements of an offense may be established by direct evidence, circumstantial evidence, or both. *State v. Durr*, 58 Ohio St.3d 86, 92, 568 N.E.2d 674 (1991). Circumstantial evidence is defined as "[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought proved." *State v. Nicely*, 39 Ohio St.3d 147, 150, 529 N.E.2d 1236 (1988), quoting Black's Law Dictionary (5th Ed.1979) 221. Circumstantial and direct evidence are of equal evidentiary value. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991).

{¶36} The weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126. Appellant waived his right to trial by jury and the case proceeded to bench trial.

In a bench trial, the court is presumed to know the law and properly apply it. *State v. Sarver*, 7th Dist. No. 05-CO-53, 2007-Ohio-601, ¶ 23.

{¶37} Appellee noted appellant's involvement could be weighed in terms of complicity to the charged offenses. A charge of complicity may be stated in terms of the principal offense, and "a trial court in a bench trial may make a finding of guilt in terms of either the principle offense or complicity." *State v. Gorayeb*, 7th Dist. No. 09-BE-15, 2010-Ohio-2535, ¶ 28, citing *State v. Smith*, 4th Dist. No. 02CA6, 2002-Ohio-4532, ¶ 14. The trial court may find appellant guilty of complicity yet state its findings in terms of the principal offense. Id., ¶ 42.

{¶38} Mere association with the principal offender is not enough to prove complicity. *State v. Mootispaw*, 110 Ohio App.3d 566, 570 (4th Dist.1996). We note, however, that "[p]articipation in criminal intent may be inferred from presence, companionship, and conduct before and after the offense is committed." *State v. Mendoza*, 137 Ohio App.3d 336, 342 (3rd Dist.2000), citing *State v. Stepp*, 117 Ohio App.3d 561, 568-569 (4th Dist.1997).

{¶39} Appellant was charged by indictment with six criminal offenses and was found guilty upon bench trial of five. We find the trial court could reasonably find appellant guilty of complicity to each of the five offenses.

{¶40} Count one, vandalism, states that appellant did knowingly cause physical harm to property that is owned or possessed by another, when either of the following applies regardless of the value of the property or the amount of damage done, the property or its equivalent is necessary for its owner or possessor to engage in the owner's or possessor's profession, business, trade, or occupation, the value of

property involved being greater than $5000 but less than $100,000.  R.C. 2909.05(B)(1)(b).

{¶41} Count two, possession of criminal tools, states that appellant did possess or have under his control a substance, device, instrument, or article with purpose to use it criminally, to wit: bolt cutters, and said substance, device, instrument or article involved in the offense was intended for use in the commission of a felony. R.C. 2923.24(A).

{¶42} Count three, theft, states that appellant did with purpose to deprive AEP, the owner, of property, to wit: copper wire, did knowingly obtain or exert control over the property without the consent of the owner or person authorized to give consent, the value of said property being $500 or more but less than $5000.  R.C. 2913.02(A)(1).

{¶43} Count four, breaking and entering, states that appellant did knowingly trespass on the land or premises of another, AEP, 1738 Liberty Road, Delaware, Ohio, with purpose to commit a felony.  R.C. 2911.13(B).

{¶44} Count six, receiving stolen property, states that appellant did recklessly receive, retain, or dispose of the property of another, to wit: copper wire, knowing or having reasonable cause to believe that the property had been obtained through the commission of a theft offense, the value of said property being $500 or more and less than $5000.  R.C. 2913.51(A).

{¶45} Appellant challenges several specific elements of his convictions.  First, he argues that sufficient evidence does not exist that he was in possession of criminal tools (the bolt cutters) or stolen property (the copper wire).   Possession can be either

actual or constructive. Constructive possession exists when a person knowingly exercises dominion and control over an object, even though the object might not be within his immediate possession. *State v. Middlebrooks*, 5th Dist. No. 2010 AP 08 0027, 2011-Ohio-4574, ¶ 39, citing *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1985). Dominion and control may be proven by circumstantial evidence alone. *State v. Zachery*, 5th Dist. No. 2008-CA-00187, 2009-Ohio-715, ¶ 31, citing *State v. Trembly*, 137 Ohio App.3d 134, 141, 738 N.E.2d 93 (8th Dist. 2000).

{¶46} Sufficient evidence exists appellant was in constructive possession of the bolt cutters and the stolen copper. All four co-defendants were outside the minivan when Ailes approached; copper was in the back of the van, and also in the grass near the van. The bolt cutters were immediately outside the van. These circumstances, combined with the proximity of the van to the AEP substation where the theft occurred, make it reasonable for the trial court to conclude that appellant was in constructive possession of the bolt cutters and the stolen copper.

{¶47} Next, appellant asserts sufficient evidence does not establish he entered onto AEP's property. Evidence demonstrated wire had been pulled from the ground at the substation, and appellant was found in possession of wire which appeared to have been pulled from the ground. In light of the surrounding circumstances, specifically that the minivan, appellant, and his co-defendants were found less than a tenth of a mile away from the substation in possession copper wire of lengths matching the substation's missing wire, and they would have had to enter upon AEP's property to cut and retrieve it, we find sufficient evidence exists appellant entered upon the property.

{¶48} Third, appellant challenges the sufficiency of appellee's evidence as to the value of the stolen property. State's Exhibit 25, the spreadsheet prepared by the AEP station supervisor, detailed the cost of these criminal acts, broken down into materials and replacement outlay including labor. Pursuant to R.C. 2913.61(D)(2), "[t]he value of * * * materials, supplies, equipment, and fixtures used in the profession, business, trade, occupation, or avocation of its owner * * * and which retains substantial utility for its purpose regardless of its age or condition, is the cost of replacing the property with new property of like kind and quality." The trial court could properly consider the replacement costs above and beyond the value of the recovered wire itself. *See, State v. Turner*, 8th Dist. No. 86916, 2006-Ohio-4098, ¶ 21 (true value of stolen copper includes materials and labor to repair damage sustained in removal). We find sufficient evidence exists the value of the property involved in the theft offenses is greater than $500 and less than $5000.

{¶49} Finally, appellant cites case authority in support of his general premise insufficient evidence exists to establish appellant's participation in the crimes. We find this case law to be inapplicable to the facts of the instant case. In *State v. Creighton*, insufficient evidence existed to tie the defendant to a series of criminal offenses related to drug trafficking because no direct evidence of his involvement was found, and evidence did indicate he was merely visiting the house in question. 8th Dist. No. 95607, 2011-Ohio-5919. In the instant case, appellant was discovered in the midst of the evidence, and was the only co-defendant to offer an explanation, albeit infeasible, for possession of the copper. In other words, sufficient evidence exists that appellant knew of and had active participation in the copper theft. In *State v. Bohanna*, we

found insufficient evidence for an aggravated robbery conviction because a dearth of evidence was presented as to whether the defendant displayed, brandished, or used a weapon. 5th Dist. No. 09CAA120103, 2010-Ohio-5568. No such issue exists in the instant case.

{¶50} With respect to appellant's challenge to the sufficiency of the evidence, we find in reviewing the record in a light most favorable to appellee there was sufficient evidence for the trial court to conclude the essential elements of vandalism, possession of criminal tools, theft, breaking and entering, and receiving stolen property beyond a reasonable doubt.

{¶51} Accordingly, appellant's second assignment of error is overruled.

{¶52} Appellant's two assignments of error are therefore overruled and the judgment of the Delaware County Court of Common Pleas is affirmed.

By: Delaney, P.J.

Hoffman, J. and

Farmer, J. concur.


_____
HON. PATRICIA A. DELANEY


_____
HON. WILLIAM B. HOFFMAN


_____
HON. SHEILA G. FARMER

[Cite as *State v. Collins*, 2012-Ohio-2452.]

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| JOSEPH R. COLLINS | : | |
| | : | |
| | : | Case No. 11CAA090082 |
| Defendant-Appellant | : | |

For the reasons stated in our accompanying Opinion on file, the judgment of the Delaware County Court of Common Pleas is affirmed. Costs assessed to appellant.

_____
HON. PATRICIA A. DELANEY

_____
HON. WILLIAM B. HOFFMAN

_____
HON. SHEILA G. FARMER